## WILLIAM E. MUTH, Appellant, v. ST. LOUIS TRUST COMPANY, · Respondent.

### St. Louis Court of Appeals, April 15, 1902.

1. **Trust Companies: WHEN DOING A BANKING BUSINESS: POWER OF TELLER IN TRUST COMPANY.** When this case was before the appellate court before (88 Mo. App. 596) it was found from the evidence that the defendant had fully entered upon the domain of banking in respect to receiving deposits and paying out money on checks, and that it should be held to have accepted the responsibilities incident to that department of banking, and that it had the power to certify checks drawn on it, and that when it certified a check it assumed an obligation the same in degree as a bank would have contracted by doing a like act.

2. **Powers of Teller in Bank to Certify Check.** The powers of a bank teller are limited to passing on the genuineness of signatures to checks presented for payment, and in paying out the money of a bank on checks.

3. ———: INSTRUCTION. And it is not error to refuse to instruct the jury that a teller in a bank has implied authority to certify a check.

4. ———: ———. But when the power to certify checks is habitually exercised by a teller in a bank, the question of the authority of the teller in any case, to certify a check should be submitted to the jury on appropriate instructions. And in the case at bar, the court very properly submitted the question of the teller's authority to certify the check to the jury.

5. **Fraud Evidence.** The evidence in the case at bar examined, and it is held that there was ample evidence of fraud on the part of plaintiff to have warranted the court to submit that issue to the jury.

6. **Witness: IMPEACHMENT OF WITNESS ON COLLATERAL ISSUE.** Where plaintiff as a witness has thoroughly impeached himself in his testimony, he can not be prejudiced by the impeaching testimony of a witness, although the witness testifies to matters collateral to the issue.

7. **Evidence Can Not Vary Written Contract.** In the case at bar, the conversation between plaintiff and Jones, the teller, at the time the check was certified, did not tend to vary the written contract indorsed on the face of the check.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. H. Biggs*, Special Judge.

AFFIRMED.

*Thos. B. Harlan* and *Perry Post Taylor* for appellant.

(1) Mr. Jones, defendant's paying teller, had undoubtedly, by virtue of his position, an inherent implied authority to certify checks and bind the defendant thereby. 2 Daniels on Neg. Instruments, p. 637, sec. 1610; Morse on Banking (3 Ed.), sec. 413, p. 673; Bank v. Bank, 16 N. Y. 125; Meads v. Merchants' Bank, 25 N. Y. 143; Clews v. Bank, 114 N. Y. 70. (2) The scope of an agency is to be determined not alone from what the principal may have told the agent to do, but from what he knows or in the exercise of ordinary care and prudence ought to know, the agent is doing in the transaction. Mechem on Agency, sec. 282; Kingsley v. Fitts, 51 Vt. 414; Mill Co. v. Bank, 52 Minn. 224; Martin v. Webb, 110 U. S. 77. (3) There is no proof of fraud in the case. Fraud is never presumed, but must be proven; a mere suspicion of fraud is not enough. The proof must be clear and convincing. No inference of fraud can be drawn from the relationship of plaintiff and E. G. Muth. Ettinger v. Kohn, 134 Mo. 492; Farmers Bank v. Worthington, 145 Mo. 91; Mfg. Co. v. Troll, 69 Mo. App. 474. (4) Representations having reference merely to the future, however much relied

upon, constitute no ground of action or defense, and such representations should not be admitted in evidence in this case. Morris v. McMahan, 75 Mo. App. 494; Jackson v. Wood, 88 Mo. 76. (5) Defendant had the means at hand to protect itself from any such fraud as alleged in this case and negligently failing to do so it can not complain. Wade v. Ringo, 122 Mo. 322; Lewis v. Land Co., 124 Mo. 673; Brouckman v. Leighton, 60 Mo. App. 38; Hitchcock v. Baughan, 36 Mo. App. 216. (6) The authority of teller Jones to certify checks is, under the facts in this record, fully established by long continued and repeated acts of like kind, acquiesced in by defendant. The authority is fully established by his conduct and defendant's acquiescence. Muth v. Trust Co., 88 Mo. App. 596; Sharp v. Knox, 48 Mo. App. 169; Johnson v. Hurley, 115 Mo. 513; Buckle v. Probasco, 58 Mo. App. 49; McNichols v. Nelson, 45 Mo. App. 446. (7) To permit defendant to deny such authority would enable it to commit a fraud upon plaintiff who dealt with it upon the honest assumption that said teller had such authority. 1 Am. and Eng. Ency. of Law (2 Ed.), p. 990; Law v. Stokes, 32 N. J. L. 249; Hyde v. Bank, 48 Mo. App. 434; Carroll v. Railway, 14 Mo. App. 490. (8) A witness can not be impeached by contradicting him on an immaterial issue. Corder v. Primm, 60 Mo. App. 423; State to use v. Bank, 10 Mo. App. 482; State ex rel. v. McCabe, 10 Mo. App. 578.

*Stewart, Cunningham & Eliot* for respondent.

(1) The actual and apparent authority of the teller in this case present questions for determination by the jury. Muth v. Trust Company, 88 Mo. App. 596; Walker v. St. Louis National Bank, 5 Mo. App. 214; Johnson v. Hurley, 115 Mo. 520. (2) Where fraud is an issue, great liberality must be exercised in the admission of evidence. Fidelity Loan Guaranty Co. v. Baker, 54 Mo. App. 79; Stewart v.

Severance, 43 Mo. 322. (3) Where there is evidence of fraud, the question is one for the jury. While it is not to be presumed, anything which satisfies the mind and conscience is sufficient. Massey v. Young, 73 Mo. 260. (4) Fraud may be established by circumstantial evidence. Burgert v. Borchert, 59 Mo. 380; Martin v. Estes, 132 Mo. 402; Spengler v. Kaufman, 46 Mo. App. 644; Hopkins v. Sievert, 58 Mo. 201. (5) Failure of a party against whom fraud is charged, to produce as witnesses persons alleged to have participated in the fraud and who are within reach, will raise a presumption in favor of the charge. Baldwin v. Whitcomb, 71 Mo. 657.

BLAND, P. J.—The suit is on a certified check drawn by E. G. Muth & Company on the St. Louis Trust Company in favor of W. E. Muth, plaintiff, for nineteen hundred and fifty dollars, dated January 14, 1897. Across the face of the check is written these words, "good, St. Louis Trust Company, by F. P. Jones, Tell."

The answer was first, a general denial for want of authority in Jones as teller to certify the check, and the following paragraph, to-wit:

"And for further answer to the plaintiff's amended petition, the defendant states that the drawer of the said check was E. G. Muth & Company, a co-partnership firm composed of E. G. Muth and the plaintiff, who were brothers, and engaged in the shoe business in the city of St. Louis; that the said E. G. Muth and the plaintiff, W. E. Muth, conspired together for the purpose of defrauding the defendant in the amount of $1,950, the face value of the said check, and that the plaintiff is not in equity and good conscience entitled to recover anything thereon; that the said E. G. Muth and W. E. Muth, having obtained from defendant's employee an apparent certification or statement that the said check was good,

at a time when the same was in fact good, proceeded wrong-
fully and fraudulently to draw out from the deposit account
of E. G. Muth & Company all of the money due thereon, and
thereby to deprive the defendant of the means to make pay-
ment of the said check, with the fraudulent intent of calling
upon the defendant to make payment of the said $1,950 called
for by the said check thereafter and to compel payment
thereof; that through the making and negotiation of checks
of later date, which were presented to the defendant for pay-
ment and allowed to reach the defendant through ordinary
business channels, such as indicated no fraud or wrongful in-
tention, obtained from the defendant all of the money on de-
posit to the credit of E. G. Muth & Company, except the sum
of $96; and the defendant charges and states that the said
later checks were drawn by E. G. Muth & Company for the
purpose and with the actual intent to get the amount of money
which was then on deposit and to thereafter insist on the pay-
ment of the check for $1,950, in this way cheating and de-
frauding the defendant out of the amount thereof. And the
defendant states that by reason of said fraudulent conspiracy
and intent, the plaintiff is not entitled to recover on the claim
herein," and several other special defenses not necessary to
note as they were not submitted to the jury.

The undisputed facts are that F. P. Jones was the paying
teller of the defendant and that on January 14, 1897, the part
nership of E. G. Muth & Company, composed of E. G. Muth
and plaintiff, had to its credit on their deposit account with
defendant over two thousand dollars; that E. G. Muth was
the acting member of the firm of E. G. Muth & Company and
had for a considerable period of time prior to January 14,
1897, deposited the moneys of the firm with the defendant
from time to time and drew the checks of the firm against
these deposits; that the check in question was drawn by E. G.
Muth & Company and presented to F. P. Jones as paying
teller at the counter of defendant by plaintiff in the presence

of E. G. Muth, with the request from plaintiff for exchange on New York; that in discussing the matter and after plaintiff found that exchange on New York would cost him something, at the suggestion of Jones, plaintiff concluded to retain the check with Jones' certification, and that Jones did then and there write the indorsement found on the face of the check and certified that it was good; that plaintiff kept his individual deposit account with the Union Trust Company; that the check in suit was retained by plaintiff for over ten months without being presented for payment and without being put in circulation; that after keeping the check about ten months, plaintiff deposited it with the Union Trust Company to the credit of his individual account; that when the check reached the defendant it refused to honor it and plaintiff was induced by the Union Trust Company to take it up; that after repossessing himself of the check this suit was brought.

The deposit account of E. G. Muth & Company was not charged by Jones with the check when he certified it, nor was any entry made in any account book of defendant charging up the check, nor was any memorandum made by Jones of the fact that he had certified it. On the date the check was presented and certified, the balance to the credit of E. G. Muth & Company on the books of defendant was twenty-one hundred and five dollars and some cents. On the ninth of April, following, the balance was twenty hundred and eighty-six dollars and fifty-eight cents. On the third of August, following, it had been reduced to fourteen hundred and thirty-four dollars and thirteen cents by checks drawn by E. G. Muth & Company. On August sixteenth a check for six hundred dollars was presented and paid and on the twentieth day of October another for five hundred and twenty-five dollars was presented and paid. These two checks and one for five hundred and nine dollars and seventy-five cents presented and paid on June 3, 1897, were drawn payable to the First National Bank of Flora, Illinois, where the plaintiff then resided. When the

check in suit was presented to the defendant, the deposit account of E. G. Muth & Company had been drawn down to ninety-six dollars.

In respect to the authority of Jones, as teller, to certify checks, the evidence was that he and his successor had been in the habit of certifying checks for divers business firms in the city of St. Louis and that the defendant had honored and paid them; that the firm of E. G. Muth & Company, more than a year previous to the certification of the check in suit, got a check certified by Jones which it used in its business and which was duly honored and paid by the defendant.

Plaintiff testified that he was a dentist; that he and his brother, prior to January 14, 1897, were engaged in several business enterprises in the city of St. Louis; that he furnished most of the money and that the management of the enterprises was entrusted entirely to his brother, E. G. Muth, he (plaintiff) being engaged in the practice of his profession; that these enterprises were all closed up prior to January 14, 1897, and that the check in question was given to liquidate in part the indebtedness of E. G. Muth to him for money loaned to E. G. Muth during their joint operations in business; that he resided at Flora, Illinois, when the check was given to him and certified, and that he continued to reside there until sometime after the check was presented for payment; that he did not know that his brother was drawing money from the defendant after the certification of the check and that he received no part of the said fund or any benefit therefrom.

E. G. Muth did not testify.

On the part of the defendant it was shown that there was no express authority conferred by by-law or resolution of the board of directors of the defendant on its teller to certify checks.

Jones testified that he was paying and note teller; that the defendant had no cashier and that he was under the secretary and president of the company; that as paying teller he

had charge of the notes and collaterals and paid checks; that he was not an officer of the company; that he was in the savings department of the company as a clerk and was the highest clerk in that department but had no clerk or clerks working under him. He stated that he had certified checks for the accommodation of the customers of the defendant; that such checks were usually presented for payment in a few days after they were certified and that it was not his custom to charge them up to the account of the drawers until they were presented for payment and paid. Over the objection of plaintiff's counsel Jones was permitted to state, in substance, that when the check in suit was certified it was with the understanding that it would be presented in a few days for payment and that he did not charge the account of E. G. Muth & Company with the check.

On cross-examination plaintiff testified that he kept the check for two or three weeks and then indorsed it and gave it to his wife with instructions to deposit it in the Union Trust Company to his credit; that he thought nothing more about it until nearly ten months afterwards when he was informed by his wife that there was not enough money to his credit in the Union Trust Company to meet a check for two hundred dollars which he had drawn in her favor; that he was surprised at this information as he thought he had at least two thousand dollars to his credit with the Union Trust Company and in looking through his cancelled checks for the purpose of ascertaining what was wrong with his account he ran across the check among the cancelled checks, and that he then took the check and deposited it.

Over the objection of plaintiff's counsel, the plaintiff was required to testify on cross-examination that his marriage was not celebrated until June 17, 1897, and that in the summer of 1897 he borrowed three thousand dollars and gave a deed of trust on real estate as security and that he declared to the notary, who took and certified his acknowledgment to the deed,

that he was single and unmarried. In explanation of his marital relations he testified that in 1895, he and his wife went before a justice of the peace in the State of Illinois and acknowledged before him that they took each other for husband and wife and that afterwards to please his mother he had the marriage ceremony performed between himself and wife in the city of Memphis. In respect to the acknowledgment of the deed he acknowledged that he made a false statement. In respect to borrowing the three thousand dollars when he had the check in his possession, the only explanation he gave was that he was building a house and that he borrowed the money of a building and loan association. Over the objection of plaintiff's counsel, plaintiff was required to give his version of a conversation had about the acknowledgment of the deed of trust with one Stewart and was asked if he did not acknowledge to Stewart that he lied when he represented himself as a single man to the notary. He denied that he made any such acknowledgment.

Stewart was put on the stand and permitted to testify that plaintiff did in the conversation acknowledge that he had lied when he acknowledged the deed as a single man.

For plaintiff the court gave the following instructions:.

"1. The court instructs the jury that the indorsement on the face of the check sued on, is in proper form to constitute a certification thereof; and the court instructs you that if you find from the evidence that F. P. Jones, defendant's paying teller, at the time of making said indorsement, had authority or apparent authority, as defined in these instructions, to make the indorsement of certification upon said check, and if you further find from the evidence that plaintiff acted in good faith and without fraud, as defined in another instruction herewith given, then your verdict must be for the plaintiff.

"3. The court instructs the jury that plaintiff is not required to prove that defendant's paying teller had actual authority conferred upon him by defendant to certify checks,

but that plaintiff had the right, in good faith, to rely upon the apparent authority of said paying teller to certify checks. And the court further instructs you that whenever a person has held out another as his agent, authorized to act for him in a given capacity, or has knowingly and without dissent permitted such other to act as his agent in such capacity; or where his habits and course of dealing have been such as to reasonably warrant the presumption that such other was his agent authorized to act in that capacity, whether it be in a single transaction or in a series of transactions, his authority to such other to act for him in that capacity will be conclusively presumed, so far as it may be necessary to protect the rights of third persons, who have relied thereon in good faith, and in the exercise of reasonable prudence, and the principal will not be permitted to deny that such other was not his agent, authorized to do the act that he assumed to do, provided that act was within the real or apparent scope of the presumed authority.

"5. The court instructs the jury that if you find from the evidence that the check sued on was certified by the authority of the defendant company and that at the time of said certification there was sufficient funds of the maker of said check on deposit with defendant to pay said check, then defendant had the right to retain out of the funds of said maker a sufficient amount to pay said check whenever the same might be presented.

"6. The court instructs the jury that if they find from the evidence that at the time the check sued on was presented to defendant for certification, there were sufficient funds of the drawer on deposit with the defendant to pay the same, that it became the duty of the defendant to retain said funds to pay said check, provided the jury finds from the evidence that defendant's teller had authority to certify said check.

"10. The court instructs the jury that if they find for the plaintiff in this case they will assess his damages in the

sum of $1,950, and interest thereon, at the rate of six per cent per annum from the twenty-ninth day of November, 1897."

On its own motion the court gave the following:

"4. The court instructs the jury that if they find from the evidence that checks were certified by the paying tellers of the defendant company, and if you further find from the evidence that said certifications were made in the general course of the defendant's business and if you further find that plaintiff, in good faith, dealt with said defendant company on the basis of said course of business and if you further find from the evidence that the officers of defendant knew of said course of business, then the defendant will be bound by the act of its paying teller in making the certification of the check sued on," and refused the following:

"2. The court instructs the jury that F. P. Jones, as teller of defendant company by virtue of his position as such paying teller, had inherent authority to certify checks and bind the defendant thereby.

"4. The court instructs the jury that if they find from the evidence that checks were certified by the paying tellers of the defendant company, and if you further find from the evidence that said certifications were made in the general course of the defendant's business, and if you further find that plaintiff in good faith dealt with said defendant company on the basis of said course of business, and if you further find from the evidence that the officers of defendant knew of said course of business or by the exercise of proper diligence ought to have known of said course of business, then in this case, the officers of said company will be presumed to have known of such course of business, and defendant will be bound by the act of its paying teller in making the certification of the check sued on.

"8. The court instructs the jury that there is no proof of fraud in this case."

For the defendant the court gave the following instructions:

"1. The court instructs the jury that unless they find from the evidence that Frank P. Jones, the person whose name appears on the face of the writing offered by the plaintiff, was authorized or held out to the public by the defendant company as being authorized to certify or mark 'good,' writings or checks of the character of the paper sued on by plaintiff, they will find for the defendant. And the court states to the jury that the fact that the said Frank P. Jones signed himself as 'teller,' or was designated or called 'teller' or 'paying teller' of the defendant company, is not of itself sufficient to justify the conclusion that the said Jones was clothed with any such authority.

"3. The court instructs the jury that one who deals with an agent is put upon inquiry as to the extent of the agent's authority and assumes the risk of the agent having authority to bind his principal in the transaction in which they are engaged; but if the principal has held out the agent as having authority to transact the business, or knowingly permitted the agent to so act, the agent will be conclusively presumed to have the authority whether it has actually been conferred upon him or not.

"4. The court instructs the jury that if they find from the evidence that the writing or paper sued upon by the plaintiff was marked or certified 'good,' in the name of the defendant by an employee, and that the plaintiff obtained such marking or certification in pursuance of a design or plan to defraud the defendant by keeping or secreting the said paper for such time as might be necessary to permit the money represented by said paper to be drawn out upon other orders, writings or checks, with the intention of then presenting the said writing and demanding payment of the amount ordered therein to be paid, the jury will find for the defendant.

"5. The court instructs the jury that if they find from

the evidence that the plaintiff and one E. G. Muth, his brother, confederated or conspired together to defraud the defendant by placing it in such a position that it might be called upon to pay the amount of the writing or check sued upon by plaintiff after having already paid out upon other orders or checks the money to the credit of the drawer or drawers of such order or check, and that the plaintiff is in possession of the instrument sued on as a part of such confederation or conspiracy, the jury will find for the defendant.

"7.    You are the sole judges of the weight of the evidence and the credibility of the witnesses, and in determining the same you will consider the character and reputation of any witness, if shown, his bias and prejudice, and also the interest, if any, any witness may have in the result of the case; also the consistency and probability and the reasonableness or unreasonableness of his testimony as compared with the other testimony in the case, of each witness's testimony, viewed in the light of all the facts and circumstances proven in the case.    If you believe that any witness has willfully sworn falsely to any material fact in the case, you will disregard such false testimony, and you may disregard any part or all of such witness's testimony.

"8.    The court instructs the jury, that any nine or more of the jurors concurring may return a verdict.    If all of the jurors concur in the verdict, the foreman alone should sign it; but if rendered by a less number than the entire panel the verdict should be signed by all the jurors who agree to it."

The verdict (by nine jurors) was for the defendant, and after an unsuccessful motion for new trial, which was filed in due time, plaintiff appealed.

I.    When the case was here before (88 Mo. App. 596), it was found from the evidence that the defendant had fully entered upon the domain of banking in respect to receiving deposits and paying out money on checks and that it should be held to have accepted the incidents and responsibilities inci-

dent to that department of banking, and that it had the power to certify checks drawn on it and that when it certified a check it assumed an obligation the same in degree as a bank would have contracted by doing a like act.   It was not held, however, that Jones, as paying teller, was by virtue of his employment clothed with authority to certify checks but that if this authority existed, it must be inferred from the course or conduct of Jones in regard to the certification of checks and the payment of them afterwards by the defendant.

In Walker v. St. Louis National Bank, 5 Mo. App. l. c. 217, it is said that a teller of a bank "is an agent acting under a special or express authority, and not one so appointed by a principal that there can arise any implication of undefined powers."

In 1 Morse on Banks and Banking (3 Ed.), section 413, it is said:  "The cashier, president and teller [of a bank] have inherent power to certify checks," but that "the authority of a subordinate officer to certify must be shown by a course of dealing or actual authorization."

In 2 Daniel on Negotiable Instruments, section 1610, the author says:  "The cashier [of a bank] undoubtedly has implied power to certify checks."

In 5 American and English Ency. of Law (2 Ed.), p. 1052, it is said:  "The president, cashier, and teller may by virtue of their position bind the bank by certifying checks when presented to them in the due course of business."

In support of the texts in Morse on Banks and Banking, and of the American and English Ency. of Law, that a teller by virtue of his position is authorized to certify checks, New York cases only are cited.   The weight of authority undoubtedly is that the cashier of a bank has inherent authority to certify checks.   Merchants' Bank v. State Bank, 10 Wall. (U. S.) 648; Martin v. Webb, 110 U. S. 7.   Outside of the State of New York we have not been able to find any case holding that a teller has implied authority to certify checks.

His powers seem to be limited to passing on the genuineness of signatures to checks presented for payment and in paying out the money of the bank on checks. Such power seems to us to be denied to him in Walker v. St. Louis National Bank, supra, and we hold that the court did not err in refusing to instruct that Jones, as teller, had implied authority to certify the check in suit.

II.   Where the power is habitually exercised by an agent, such as a teller of a bank, with the knowledge and acquiescence, of the bank, the exercise of the power defines and establishes, as to the public, the power so exercised, or as Mr. Mechem states the rule:

"The authority of an agent in any given case, therefore, is an attribute of the character bestowed upon him in that case by the principal. Thus if the principal has, by his express act, or as the logical and legal result of his words or conduct, impressed upon the agent the character of one authorized to act or speak for him in a given capacity, authority so to speak and act, follows as a necessary attribute of the character, and the principal having conferred the character will not be heard to assert, as against third persons who have relied thereon in good faith, that he did not intend to impose so much authority, or that he had given the agent express instructions not to exercise it. The latter question is one to be settled between the agent and himself. It rested with the principal to determine in the first instance what character he would impart, but having made the determination and imparted the character, he must be held to have intended also the usual and legal attributes of that character."

See also Johnson v. Hurley, 115 Mo. 513.

The court very properly submitted the questions of Jones' authority to certify the check to the jury under what we find to be appropriate instructions in the light of all the facts and circumstances of the case.

III.   It is strenuously urged by plaintiff's counsel that

there is no evidence that the certification of the check was procured with a fraudulent design to cheat the defendant. There is nothing in the mere fact of getting the teller to certify the check that squints at fraud but a design to defraud is not always susceptible of proof by a single act; such designs are usually made out by a succession of acts culminating in the fraud. In such cases the whole course of conduct, in respect to the main fact, should be taken into consideration in determining whether or not there was a fraudulent design and the conduct of the fraud-feasor from the inception to the culmination of the transaction should be considered and weighed as a whole in order to arrive at a correct conclusion as to his original purpose.

When the evidence of plaintiff is considered as a whole, it would tax the credulity of the most unsophisticated man to arrive at the conclusion that there was a total absence of evidence of fraud. His retention of the check for ten months in his possession without any attempt to use it, his borrowing money in the meantime and paying interest thereon when the check was earning no interest, his unsatisfactory explanation of what he did with the check, his attempt to reconcile his statement that he gave his wife the check when the certificate of his marriage shows that he was not married in fact until a much later date, the fact that the three last checks drawn against the deposit were made payable to a bank in Flora, Illinois, where he then resided, the fact that in a former experience with Jones, defendant's teller, he had learned that Jones was not in the habit of charging certified checks to the account of the drawers until after the checks were paid, the fact that E. G. Muth, his brother, did not testify, the fact of his confessed falsehood before the notary, all conspired to prove that there probably was a covert design on his and his brother's part to cheat and defraud the defendant by means of the certified check and we think furnished ample evidence of fraud to

have warranted the court to submit that issue to the jury, which it did do in appropriate instructions.

V.   It is contended that the impeachment of plaintiff by Stewart was on a collateral matter and for this reason was error.   We agree with this contention.   A witness can not be impeached on matters collateral to the issue; but we are unable to see how plaintiff could have been prejudiced by the impeaching testimony of Stewart.   He had thoroughly impeached himself by his own testimony in respect to the same matter by admitting that he had lied to the notary who took and certified his acknowledgment to the deed of trust.   The testimony of Stewart could add nothing to *defendant's* self-impeachment.

VI.   Plaintiff assigned as error the admission of the conversation between plaintiff and Jones at the time the check was certified.   The point is that the conversation tended to vary the written contract indorsed on the face of the check. The conversation had no such tendency.   It only tended to show that Jones expected the check would be presented for payment in a few days and that plaintiff tacitly assented thereto.   There was no contract that it should be presented at any particular time.   There was nothing said or agreed to whereby the contract implied by the certification was in the least qualified and we think this evidence was admissible, not for the purpose of showing any alteration in the contract but as a fact to be considered along with all the other facts tending to prove the fraud alleged in the answer.

After a careful examination of the record, which is very voluminous, and going over the briefs and authorities submitted by counsel, we have failed to discover any reversible error in the record and affirm the judgment.   *Barclay* and *Goode, JJ.,* concur.