## DECATUR COTTON SEED OIL CO. v. BELEW. (No. 8159.)†

(Court of Civil Appeals of Texas. Ft. Worth. May 1, 1915. Rehearing Denied June 5, 1915.)

**1. PLEADING ☞34 — PETITION — AIDER BY VERDICT AND JUDGMENT.**

When not questioned by demurrer, the petition, after verdict and judgment, should be given a liberal construction to support the proceedings.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 5½, 66–74; Dec. Dig. ☞34.]

**2. NEGLIGENCE ☞138—INSTRUCTIONS—SUBMISSION OF ISSUES.**

It is only necessary to submit to the jury each of an entire series of negligent acts made the foundation of an action when proof of each act is necessary to show negligence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 354–370; Dec. Dig. ☞138.]

**3. MASTER AND SERVANT ☞264—INJURIES TO SERVANT—ACTIONS—COMPLAINT.**

The complaint of a servant, injured when the walls of the building in which he worked collapsed and precipitated a water tank upon him, alleged that the building and the walls were under the exclusive control of the master, that the servant did not fully know the condition and defects therein, but believed that the walls and support were negligently constructed and permitted to become dangerous, in that the walls were built in two sections in no way connected, that the inner section was constructed of small stones held together with inferior mortar, that water was allowed to drip upon and wash away the mortar, and that the supports for the tank rested solely on the inner wall. The charge submitted to the jury the questions whether the walls of the room in which the servant worked were negligently constructed, and whether they were allowed to become weakened by the dripping of water, etc., and authorized a verdict for the servant if the master was negligent in any of the several particulars. *Held* that the complaint warranted submission to the jury of the question whether the master was negligent in any of the several ways alleged, notwithstanding that the negligent acts were alleged in the conjunctive.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876; Dec. Dig. ☞264.]

**4. APPEAL AND ERROR ☞1066 — REVIEW — HARMLESS ERROR.**

In such case where it appeared that no unusual strain was imposed upon the walls, a charge that while the master was not an insurer of the servant's safety, it was his duty to use ordinary care to furnish a reasonably safe place to work, and that the servant could assume that the building was safe and was not required to inspect it, etc., cannot be held prejudicial as submitting grounds of negligence not pleaded, for it would be unreasonable to suppose that the jury, which had before it evidence of negligent acts alleged, went into the realm of conjecture.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4220; Dec. Dig. ☞1066.]

**5. MASTER AND SERVANT ☞264—INJURIES TO SERVANT.**

In such case, notwithstanding the specific allegations of negligence, the complaint was broad enough to authorize an inquiry into the attending circumstances and causes of the accident, and so the jury were entitled to refer the facts relating to the control of the building and the circumstances relating to its fall to the specific acts of negligence charged, though the doctrine of res ipsa loquitur might not be invoked, specific negligence having been pleaded.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 861–876; Dec. Dig. ☞264.]

**6. MASTER AND SERVANT ☞265 — INJURIES TO SERVANT—"RES IPSA LOQUITUR."**

While the doctrine of res ipsa loquitur, which is a presumption of negligence arising where the particular thing causing the injury has been shown to be under the management of the defendant, and the accident to be one which would not happen in the ordinary course of events, does not ordinarily apply to master and servant cases, it may apply in extraordinary cases.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 877–908, 955; Dec. Dig. ☞265.

For other definitions, see Words and Phrases, First and Second Series, Res Ipsa Loquitur.]

**7. TRIAL ☞260—INSTRUCTIONS—REFUSAL.**

The refusal of special requests covered by those given is not error.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. ☞260.]

**8. TRIAL ☞131—ARGUMENTS OF COUNSEL.**

Where part of counsel's argument was plainly within the scope of the evidence, and the objection went to the whole, the argument will not be considered reversible error, particularly where the matter was treated with levity by counsel and the court.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 312–314; Dec. Dig. ☞131.]

**9. APPEAL AND ERROR ☞1060 — REVIEW — HARMLESS ERROR.**

Improper argument of counsel will not warrant reversal, unless it appears that the verdict was affected by such argument.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. ☞1060.]

**10. TRIAL ☞121 — ARGUMENT — PERSONAL INJURIES—AWARD.**

Where plaintiff's injuries resulted in paralysis, argument of counsel that plaintiff was entitled to have damages assessed because his injuries would preclude him from having children, and thus he would suffer mental anguish is warranted, for mental anguish would naturally result from such injury and inability to perpetuate the race.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 294–298, 300; Dec. Dig. ☞121.]

**11. MASTER AND SERVANT ☞270 — INJURIES—EVIDENCE—CONDITION OF BUILDING.**

In an action by a servant for injuries resulting from the collapse of a building, a witness

who saw the building and the walls a few hours after the accident may testify as to their condition and as to the mortar being washed out.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 913–927, 932; Dec. Dig. ⊂⊃270.]

**12. EVIDENCE ⊂⊃513 — OPINION EVIDENCE — EXPERTS.**

An experienced builder may testify as to defects he discovered in the walls of the building which collapsed, such testimony not invading the province of the jury.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2317, 2318; Dec. Dig. ⊂⊃513.]

**13. EVIDENCE ⊂⊃18 — JUDICIAL NOTICE — WEIGHT OF WATER.**

The court will take judicial notice that a gallon of water weighs 8⅓ pounds.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 22; Dec. Dig. ⊂⊃18.]

**14. EVIDENCE ⊂⊃553 — OPINION EVIDENCE — HYPOTHETICAL QUESTIONS.**

Where the walls of a building collapsed, precipitating a water tank upon plaintiff, an hypothetical question to an expert builder which assumed that the tank contained 6,000 gallons instead of 5,500 is not objectionable, it being sufficient in such cases that the evidence be substantially embodied in the hypothetical question, and the error going to the weight and not the competency of the testimony.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2369–2374; Dec. Dig. ⊂⊃553.]

**15. DAMAGES ⊂⊃132 — PERSONAL INJURIES — MEASURE.**

Plaintiff, a strong, healthy man of 21 years of age, earning about $1.75 a day, who had just been married, was injured by the collapse of a building. The accident resulted in a broken leg, in injuries to his forehead, and in injuries to his back which caused paralysis. After the accident he lost sexual power and could not control his excretions, and his legs and body seemed to be wasting away. He incurred medical expenses to the extent of about $1,000 and required the almost constant attention of his mother and wife. The injuries were permanent. *Held* that an award of $20,000 was not excessive.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 372–385, 396; Dec. Dig. ⊂⊃132.]

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Action by J. S. Belew against the Decatur Cotton Seed Oil Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Thompson & Barwise and A. C. Wood, all of Ft. Worth, Ford & Ratliff, of Decatur, and Etheridge, McCormick & Bromberg, of Dallas, for appellant. McMurray & Gettys, R. E. Carswell, and J. V. Patterson, all of Decatur, for appellee.

CONNER, C. J. In October, 1913, the appellant corporation was engaged in the manufacture of cotton seed products, and appellee was in the employ of the corporation as a "linterman." The duty of the linterman was to convey from the second floor of the main building to the cotton press in the "pressroom" the lint cotton separated from the cotton seed, and there cause it to be pressed into bales of convenient size. The pressroom was a two-story structure, adjoining the main building on the east. It was 20 feet north and south and 18 feet east and west. Its ground floor furnished the base for the cotton press, the mouth of the press being within a few feet of the horizontal plane of the second story of the main building. The east wall of the main building constituted the west wall of the pressroom. In this wall, however, there was an opening, through which the linterman conveyed the lint cotton from the second story of the main building to the mouth of the press into which the lint cotton was deposited. Over the roof of the pressroom, by the walls of which the structure was supported, there was situated a water tank with a capacity of about 5,500 gallons, which, for fire protection and cleansing purposes, it was the practice to fill weekly.

While the plaintiff was so employed, and while engaged in the performance of his duties in the pressroom, the walls of the pressroom suddenly collapsed, the water tank descended, carrying everything below with it, and appellee was very seriously injured in the wreck. To recover the damages resulting from such injuries appellee sued, and on the trial below recovered a judgment for $20,000, from which appellant has prosecuted an appeal.

Inasmuch as appellant urges a number of objections to the court's charge for want of sufficient support in the pleadings, we quote such parts of the pleading and charge as are deemed to be pertinent. Appellee, after describing the pressroom and the character of his duties, alleged:

"That on said 25th day of October, 1913, while plaintiff was at work in said pressroom, the walls and supports above said pressroom sustaining the said water tank gave way and fell, carrying said water tank with its accompanying débris on and into said pressroom, falling on this plaintiff, and greatly crushing, injuring, and crippling him, as hereinafter more particularly set out.

"That said building and the walls thereof were under the exclusive control of defendant, and plaintiff does not, and did not, know fully the condition and defects therein, but believes that the walls of said press building and supports for said tank were by defendant negligently constructed, maintained and permitted to weaken and decay and become dangerous, in the manner following: That the walls of said press building were built in two sections in close proximity to each other but in no manner tied together so that the one section of the wall could have the support of the other section; that said two sections were so constructed independently of each other from the ground to the top, so that one was the inner section and the other the outer section; that the inner section of said walls was constructed of stones of indiscriminate shapes and sizes not suitable or proper to be put into such wall, which said stones were promiscuously laid in mortar of inferior quality, such as would easily dissolve and fall out from between the rocks, and a great part of which had been dissolved and washed out, prior to said accident, by water that had been negligently permitted by defendant to constantly run over out of said tank and down through and over the

said walls; that the said timbers on which the said tank rested at the top of said walls were so short that they did not extend into or over the outer section of said wall so as to have its support, but rested all of their weight and the weight of said tank on the inner section of said wall and were permitted to decay and become weak and insecure, and the said inner section of said wall, by reason of its said negligent construction and the permitting of said mortar to be dissolved and washed out, became too weak and defective to support said timbers, tank, and water resting thereon, and same crumbled and fell as hereinbefore stated.

"That defendant was negligent in constructing and maintaining said walls, timbers, and tank in such defective condition above shown, in permitting the walls of said press building and the supports of said tank to weaken and decay and thereby become dangerous, and in failing to properly inspect and repair the same, which said negligence on the part of defendant rendered the place of work of this plaintiff unsafe and dangerous and was the proximate cause of the injuries sustained by plaintiff."

The court thus submitted the main issues:

"Gentlemen of the jury: If, from a preponderance of the evidence, you believe that while plaintiff was in the employ of the defendant and at work in its pressroom, where the duties of his employment made it proper for him to be, the walls and superstructures of the building in which said room was located fell upon plaintiff, and that he thereby received the injuries complained of; and if you believe that the walls of said building consisted of an outer and inner wall, and that the timbers which supported the water tank and tower on said building rested upon the inner section only of said walls; and if you believe that the inner section of said wall was too weak to support the weight upon it and rendered it liable to fall, and that the defendant in the exercise of ordinary care and foresight should have known those facts, if they were facts; or if you believe from the evidence that said wall, by reason of the manner in which it was constructed and the stones and other material of which it was made, was too weak to bear the weight resting upon it, and that the defendant, in the exercise of ordinary care and prudence, ought to have known that fact, if it were a fact; or if you believe from the evidence that the mortar with which said wall was constructed had been dissolved and washed out by water from the tank overflowing and running down over said wall, and that said wall or walls had thereby become weakened and insufficient to support the water tank and weight resting upon said wall or walls, and that the defendant knew that fact, or by the use of ordinary care could have discovered the fact, if it were a fact; and if you believe the building fell and injured plaintiff, by reason of the defects in construction, or the defective condition of the wall or walls of said building, above referred to, if there were any such defects of construction or in the condition thereof, and if you believe plaintiff's said injuries, complained of, resulted directly and proximately from the failure of the defendant to use ordinary care in respect of any or all of the matters above referred to—you will find for the plaintiff, unless you find for the defendant under other instructions given you.

"1a. If the building fell and injured plaintiff on account of some defect or defects in the construction of same, and if its having become defective and insecure, as claimed by plaintiff, yet if such defective and insecure condition or such defects were not known to the defendant, or if the defendant, in the exercise of ordinary care, could not have discovered any such defects or such defective and insecure condition, if such existed, then and in that event the defendant would not be liable, and in case you so believe

and find from the evidence, you will find for the defendant.

"2. The defendant was not an insurer of the safety of the plaintiff, while in its employ; but the duty devolved upon the defendant to use ordinary care to furnish the plaintiff a safe place in which to work, and use ordinary care to inspect the building in which it put plaintiff to work, and to discover and remedy defects which would render his employment dangerous, and for any failure to exercise such ordinary care, and to discover and remedy such defects, if any, which would render plaintiff's employment hazardous, and which could have been discovered by the use of ordinary care, and from which injury resulted, the defendant would be liable. The plaintiff had a right to assume that the building in which he was put to work was safe, and he was not required to inspect the same to ascertain if it were safe, before entering upon his work therein; but if said building fell and injured him by reason of defects therein, and if said defects were known to him, or were open and obvious (that is, patent to the view of a person of ordinary prudence, so that in the discharge of his duties he must have known of them), he cannot recover, and if you so believe from the evidence you will find for the defendant.

"3. 'Ordinary care,' as used in this charge, means that degree of care which a person of ordinary care and prudence would use under like circumstances."

[1-3] The complaint of the first paragraph of the court's charge is:

"That the court submitted three separate and distinct combinations of facts, each as an independent basis of liability, whereas, under the pleading of the appellee, it required a finding in his favor as to all of the facts in these three combinations, in order to entitle him to a verdict."

In the absence of complaint by demurrer, and after verdict and judgment, the pleading should be given a liberal construction so as to support the proceedings. See Schuster v. Fredenthal, 74 Tex. 53, 11 S. W. 1051. So construing the allegations of appellee's petition, we think that they are to be interpreted as the court below, in effect, interpreted them in his charge. That is to say, as substantially meaning that the walls of the pressroom were too weak to sustain their superstructures as placed, either because of the specified faults in their original construction, or because of the subsequent washing out of the mortar therein, and that appellant was guilty of negligence in these respects as specified. If, as the court in effect charged, the walls were too weak by reason of any one or more of such causes, and appellant was guilty of negligence in any one or more of the specified ways alleged in so maintaining the walls, then it was liable, and the case is not altered by the fact, if conceded, that the petition charges the independent causes conjunctively, where, as we think here, each independent cause of weakness of the wall may be of itself a sufficient cause of the wreck. It is only necessary to submit to the jury each of an entire series of acts made the foundation of an action when proof of each and all of the acts is necessary to constitute a case of negligence.

This, say the court in G., H. & S. A. Ry. Co. v. Callahan, 124 S. W. 129, "is not an exception to the general rule, * * * but is in accord with it. For when it takes a combination of a number of facts to make out a case of negligence, and they are averred, the petition does not allege several grounds of negligence, but only one."

In the case of Tex. & Pac. Ry. Co. v. Kirk, 62 Tex. 227, it appears that a train upon which Kirk was a passenger was derailed and he was injured. He alleged:

"That the accident was caused by a broken rail in defendant's roadbed, a piece of which, three feet long, was missing; that the roadbed was greatly out of repair, and had been out of repair for a long time previous to the 6th of November. That defendant, by the exercise of ordinary care and diligence could have known of the bad condition of its road, and could have prevented the accident."

It was contended that proof of both of the alleged defects in the track was necessary. In disposing of the contention, the court said:

"The substance of the issues in this case was: Was the track of the appellant's road unsound and unsafe by reason of a defective rail, and was that the cause of the injury? It was alleged that the track was defective in two respects: (1) That the rail was and had been for some time broken. (2) That a part of the broken rail was missing. Proof of either of these facts would have been sufficient to establish the defective character of the track, and to sustain so much of the issue; and if the other evidence in the case showed that such defect caused the injury, then the matter in issue was sufficiently proved, in so far as it was necessary to show the cause of the injury, and so far as the issue under consideration was concerned.

"In the case of Pittsburg, Ft. Wayne & Chicago Ry. Co. v. Ruby, 38 Ind. 305 [10 Am. Rep. 111], it was alleged that the conductor and brakeman on a freight train carelessly and negligently failed to properly adjust a switch and signaled a passenger train to advance. The jury found that neither the conductor nor brakeman signaled the train to advance, but that the employés of the company did so, and it was claimed that there was a variance between the pleading and proof, or verdict. The court held that there was no variance between the pleadings and the special verdict."

Appellee cites other cases of like import, but those given, we think, support our conclusion to the effect that the plaintiff's petition supports the court's charge as against the objection mentioned.

[4] A yet more insistent objection is made to the second paragraph of the court's charge. On the trial it was excepted to in that:

"It submits issues and permits recovery upon grounds of negligence, and for causes of the falling of the building, that are not pleaded, and the ground of recovery submitted in said paragraph has no basis therefor in the pleadings."

Appellant's proposition is that in view of the allegations of the petition already quoted it was—

"prejudicial error for the trial court to instruct the jury in broad and general terms, as it did in the second paragraph of the court's main charge, that appellee was entitled to recover in this cause if appellant failed to furnish him a safe place in which to work, and failed to use ordinary care to inspect the building and to discover and remedy any defects therein which would render appellee's employment dangerous."

It is urged that the evidence "was sufficient to authorize the jury to find negligence in several respects not pleaded." But as we view the evidence after careful consideration, there was no specific defect in the walls of the pressroom, or in the supports of the tank, nor of acts or omissions tending to show negligence that do not come fairly within the allegations made. It is evident that the walls of the pressroom were too weak to sustain the supports upon which the tank rested, and. while in some respects conflicting, the evidence is abundantly sufficient to support the conclusion that the walls of the pressroom were built in two separate sections not tied together; that the inner section was composed of small stones of irregular shape and was but four inches wide; that the mortar in the inside section had in a number of places been washed out by frequent overflows of the tank above; that the supports of the tank rested on the inside section alone; and that each and all of these conditions were either known, or ascertainable by the exercise of ordinary care in inspection. There is no evidence of rotten or defective timbers, or of any wind or storm, or unusual weight or strain placed upon the walls to cause their collapse. In short, unless attributable to one or more of the causes alleged, there was no sufficient cause for the fall of the tank that can be assigned. One of the witnesses thus expressed it: "It (the building) just fell without any apparent cause." Another testified that there was no wind to amount to anything, that it "just fell dry so." In this condition of the evidence it is unreasonable to suppose that the jury entered the field of the conjectural and founded their verdict upon an unknown cause, when the evidence afforded a reasonable and just basis for a finding upon one or more of the only issues of a proximate cause for the fall of the walls of the building upon which the court's charge affirmatively authorized a finding in appellee's favor.

[5, 6] But it is further contended, in effect, that, even if the evidence fails to show any specific defect or fault not embraced in the plaintiff's allegations, that the charge at least authorized the jury to find for the plaintiff under the doctrine of res ipsa loquitur. The doctrine mentioned is that:

"Where the particular thing causing the injury has been shown to be under the management of the defendant or his servants, and the accident is such as, in the ordinary course of things, does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation, that the accident arose from want of care." Washington v. Mo., etc., Ry. Co., 90 Tex. 314, 38 S. W. 764; McCray v. Galveston, etc., R. Co., 89 Tex. 168, 34 S. W. 95.

And this doctrine has been held not to apply where specific acts of negligence are alleged. M., K. & T. Ry. Co. v. Thomas, 132 S. W. 974; Lone Star Brewing Co. v. Willie, 52 Tex. Civ. App. 550, 114 S. W. 186. The

contention, therefore, is that the jury under the second paragraph of the court's charge may have applied the rule of res ipsa loquitur and found for the plaintiff, even though they may have failed to find for him on the specific acts of negligence submitted in the first paragraph. But that this is improbable we think we have already shown. Moreover, we are unwilling to adopt the contention as broadly as stated. The general rule that a plaintiff in proving his case is confined to the specific facts alleged is as old as the law of pleading. The reason for it is that a defendant may be seasonably notified of just what he will be called upon to meet. But it is equally well settled that when the facts are not known to the plaintiff and are peculiarly within the knowledge of the defendant, greater generality of statement is permissible. M. P. Ry. Co. v. Hennessey, 75 Tex. 155, 12 S. W. 608; G., C. & S. F. Ry. Co. v. Smith, 74 Tex. 276, 11 S. W. 1104.

In the case before us the plaintiff distinctly alleged that the building under consideration and its walls were under the exclusive control of the defendant and that the plaintiff "did not fully know the condition and defects therein." Had the allegations stopped at this point the entire contention we are now considering would be useless. Indeed, the contrary is not asserted, for in such case, under the authorities last cited, the plaintiff under his general allegations of negligence could have proved and recovered upon any defect and act of negligence that existed, and in such case, too, proof of the unusual happening coupled with the circumstances of the wreck would, in the absence of explanation, afford a presumption of negligence; and the majority, at least, do not feel prepared to hold that the specific allegations in this case, qualified as they are, alter the case. At all events, plaintiff's pleadings were broad enough to authorize an inquiry into the occurrence that resulted in his injuries, and, notwithstanding the modified specific allegations, evidence of its attending circumstances and causes was admissible, if not as tending to establish an independent act of negligence not alleged, at least in aid of the defects and acts of negligence that were alleged. See S. A. & A. P. Ry. Co. v. De Ham, 93 Tex. 74, 53 S. W. 375. As the jury were thus authorized to refer the facts relating to the control of the building and the circumstances relating to its fall to one or more of the defects and acts of negligence submitted in the first paragraph of the charge, so we think should the second paragraph of the charge be made referable. The second paragraph is in its substance but an abstract statement of appellant's legal duty in the premises. It was not applied to the evidence in the sense that a verdict for the plaintiff was thereby authorized. Such a verdict was only authorized by paragraph 1.

It is not pretended that the second paragraph is incorrect as a proposition of law, or that it was improper to give it in so far as it applied to the facts alleged, shown in evidence, and submitted in paragraph 1. As applied to these facts and thus referred, we think the charge was both correct and proper, and that it is improbable that either court or jury referred the charge to any other state of facts.

[7] A number of other objections to the charge are urged on the ground that the evidence did not warrant a submission of the several issues and combination of facts set out in paragraph 1 of the charge, but with these contentions we cannot concur. Nor have we found error in the action of the court in refusing the special charges requested. Some of them are in opposition to the court's charge, others are upon the weight of the evidence, and all of them, so far as proper, were sufficiently covered by the court's charge. We, accordingly, conclude that all assignments of error complaining of the court's charge, and because of the refusal of special charges, should be overruled.

[8] In the seventh and eighth assignments of error complaint is made of certain remarks of counsel for appellee in his address to the jury, and these assignments will be considered together. The statements made the basis of the seventh assignment are as follows:

"The facts make the case. The workman did not do it. He would have given everything he had to have prevented it, no doubt. Mr. Frasier did not do it. No man connected with it, except the men who built the oilmill—these are the men responsible. This verdict here rendered should be for the purpose of deterring other men and making them do right."

The bill of exception shows that:

"To this argument when made, the attorney for the defendant objected, because such argument was out of the record and was improper and was prejudicial."

In answer to which the court said: "I did not catch the statement." Without it appearing that the statement was repeated to the court, counsel for appellee proceeded to relate an anecdote or story of "a nigger in a henhouse," and "to this counsel for defendant again excepted," whereupon the opposing counsel stated, "Have you heard that before? I will tell you one you have not heard. I withdraw that." It is insisted before us that the words, "I withdraw that," relate to the argument first quoted and not to the short story, but whether so or not the matter seems to have been taken lightly. The bill shows that there was "laughter," and the court explains that counsel for plaintiff correctly explained to the jury the true measure, items, and elements of damage, and that "at the time, in the connection in which it was used, the statement did not impress me as being in any way prejudicial to the defendant." The trial court was in a better position to ob-

serve the probable effect of the remarks complained of on the jury than this court, and we do not feel inclined to disturb his judicial discretion as exercised. Especially so in view of the fact that part of the statement was plainly within the scope of the evidence, and the objections go to the whole, and no special instruction was requested instructing the jury to disregard the statement or any part thereof.

[9] The argument complained of in the eighth assignment may be more serious. At least it was so treated by the able counsel for appellant in his oral argument on the submission of this case. The complaint is presented in appellant's bill of exception, which, omitting unnecessary parts, reads as follows:

"Be it remembered, that upon the trial of the above-entitled and numbered cause, Mr. T. J. McMurray, of counsel for plaintiff, in the concluding argument to the jury, stated that plaintiff was entitled to have damages assessed him by the jury because of the fact that through the loss of his sexual powers he would be denied the privilege of having children; that he would necessarily suffer disappointment and would suffer mental anguish as a result of his inability to have children, to all of which argument defendant, through its counsel, objected upon the ground that same was improper argument, prejudicial to the rights of the defendant, and likely calculated to unduly arouse the sympathies of the jury in behalf of plaintiff, and is too remote and speculative to serve as an element of damages. All of which objections were by the court overruled, and the motion of defendant made in open court to have the jury instructed not to consider such argument was by the court denied."

Appellant's proposition is, as indicated in the bill of exception, that "mental anguish" suffered as a result of appellee's inability to have children "is too remote and speculative as an element of damage," and the following authorities are cited in support of the proposition: Claunch v. Osborn, 23 S. W. 937; T. & P. Ry. Co. v. Randle, 18 Tex. Civ. App. 348, 44 S. W. 603; Planters' Oil Co. v. Mansell, 43 S. W. 913; G., C. & S. F. Ry. Co. v. Dickens, 54 Tex. Civ. App. 637, 118 S. W. 612; Butler v. Manhattan Ry. Co., 143 N. Y. 417, 38 N. E. 454, 26 L. R. A. 46, 42 Am. St. Rep. 738; Tunnicliffe v. Bay Cities Consolidated Ry. Co., 102 Mich. 624, 61 N. W. 11, 32 L. R. A. 142; Maynard v. O. R. & N. Co., 46 Or. 15, 78 Pac. 983, 68 L. R. A. 477; Tel. Co. v. Cooper, 71 Tex. 511, 9 S. W. 598, 1 L. R. A. 728, 10 Am. St. Rep. 772; Tel. Co. v. Solomon, 54 Tex. Civ. App. 306, 117 S. W. 214. The cases may not be entirely harmonious, but the use of improper language in the course of an argument by opposing counsel, of itself, will not authorize the reversal of a judgment. Say our Supreme Court:

"It is only in cases in which the preponderance of the evidence seems to be against the verdict, or in cases in which the verdict seems excessive and there is reason to believe that the verdict may have been affected by such course of conduct, that it becomes a ground for reversal." See I. & G. N. Ry. Co. v. Irvine, 64 Tex. 529.

This declaration was made as long as 30 years ago and has never since been materially impaired as a rule, so far as we have in mind. On the contrary, it may be said to have been emphasized by rule 62a (149 S. W. x), promulgated by express legislative authority within a comparatively recent period. That rule, so far as necessary to quote, reads:

"No judgment shall be reversed on appeal and a new trial ordered in any cause on the ground that the trial court has committed an error of law in the course of the trial, unless the appellate court shall be of opinion that the error complained of amounted to such a denial of the rights of the appellant as was reasonably calculated to cause and probably did cause the rendition of an improper judgment in the case."

If, therefore, it should be conceded that the argument under consideration was improper, we would not be inclined to reverse the judgment on that account. The argument at most could only tend to swell the amount of appellee's damages, or to cause the jury to find for appellee on the issues of liability when otherwise they would not have done so. But in neither of these respects, nor otherwise, does the record indicate a probability that the jury were influenced by passion or prejudice. On the contrary, as will be later seen, the verdict is not excessive and the evidence as a whole preponderates strongly in appellee's favor on the issues of appellant's liability.

[10] But was the argument improper? We decline to so hold. Appellee testified that since his injury he had not been able to perform the sexual act, and Dr. Johnson testified that he would likely never again have the power to do so. The essence of the argument was that appellee "would necessarily suffer disappointment and mental anguish as a result of his inability to have children," and it is to this alone that appellant by its proposition limits the inquiry, thus excluding a consideration of the grosser features involved, and the more remote loss of pleasure or profit to be derived from children to be brought as a living presence into the family. As thus limited, we think the argument was well within the field of the counsel's privilege. The power and impulses necessary to the birth of a child is an especial endowment of man by the infinitely wise Creator of all things. They are essential to the perpetuation of the race, and in so far as man is deprived of these impulses and power he is deprived of the ability to fulfill one of the chief ends of his existence. What proof is necessary to establish disappointment and distress arising from a loss of manhood? We instinctively know. At least such mental sensations are certainly natural results of a wrongful deprivation of sexual power that will be held to have been within the contemplation of the wrongdoer. A man has a divinely given right to entertain the high ideal of doing his part in perpetuating his name and kind, and if wrongfully deprived

of the power to do this, we see no legal obstacle to an inquiry of whether mental pain was a proximate result, and if so, to an award of a reasonable compensation. We will not extend this opinion by a discussion of the many cases holding that mental suffering when proximately caused by a wrongful act is a proper element of damages, but it is well settled in this state that such is the law. Thus, it has long been held that compensation is recoverable for mental distress naturally arising from wrongful assaults, from slander and libel, from indignity or insults in cases of wrongful ejection from passenger trains, in cases of seduction, and in cases where a person has been denied attendance upon the sickness or death of a relative by the negligent failure to deliver a telegram. See, generally, 1 Sutherland on Damages, § 75. No distinction is made in these cases because of the uncertain, intangible, or variable character of the mental suffering. It is to be ascertained from all the circumstances as best the court or jury may, like any other element. The test is, Was it a natural result of the wrongful act involved and was it to have been reasonably anticipated by the wrongdoer? If so, compensation is recoverable by the injured party, and in such case the damages are not remote in a legal sense. The mental pain that a jury may find to result from the consciousness suddenly brought home to an injured man that he is forever to be denied the high privilege of becoming a father, is equally as certain, as tangible, and as easily ascertainable as was so in the telegraph and other cases mentioned. In each case the mental distress springs alike directly out of and results from the wrongful injury, and not from uncertain and speculative conditions not necessarily connected therewith, as illustrated in cases cited in behalf of appellant. Whatever inferences are to be drawn from those cases, the conclusions above indicated are, we think, in accord with numerous others, including one by this court. In the case of Ft. Worth Belt Ry. Co. v. Turney, 157 S. W. 274, it appeared that Turney was injured through the negligence of the railway company. Upon the trial he was permitted to testify, in substance, over appellant's objection, that as a result of his injuries all he "could figure out" was "that he was knocked out and could see no show of working in the future," and that as a result he suffered mentally. Error was assigned to the admission of this testimony; appellant's proposition being that:

"Mental suffering, due to one's belief that he will not be able to labor and earn money, is not an element of damages in a personal injury suit."

In disposing of the question this court said:

"Appellant cites no authority in support of the proposition quoted and we cannot sustain it as broadly as it is stated. The rules of law are intended to afford compensation for all natural consequences flowing from personal injuries occasioned through the fault of another, and mental anxiety naturally resulting is recoverable. See Sutherland on Damages (2d Ed.) § 1241; M., K. & T. Ry. Co. of Tex. v. Warren, 39 S. W. 652. It seems to us that the physical pain resulting from the injury, which is clearly an element of damage, was not more natural than the distress and anxiety of mind occasioned by the consciousness that the injury received was such as to wholly incapacitate the head of the family from pursuing his usual occupation, thus to provide for those dependent upon him."

No writ of error was applied for in that case, but one was applied for and refused by our Supreme Court in the case of Citizens' Ry. Co. v. Branham, 137 S. W. 403, by the Austin Court of Appeals. That, too, was a case of personal injury arising from the negligence of the railway company, and it was distinctly held that:

"There was no error in permitting appellee to testify that he had suffered mental distress by reason of being incapacitated to earn a livelihood."

See, also, the following cases cited in behalf of appellee: Prescott v. Robinson, 74 N. H. 460, 69 Atl. 522, 17 L. R. A. (N. S.) 594, 124 Am. St. Rep. 987; Morin v. Ottawa Electric Ry. Co., 15 Ann. Cas. 51, and cases cited; M., K. & T. Ry. Co. v. Warren, 39 S. W. 653; G., H. & S. A. Ry. Co. v. Clark, 21 Tex. Civ. App. 167, 51 S. W. 276; McDermott v. Severe, 202 U. S. 600, 26 Sup. Ct. 709, 50 L. Ed. 1162; Ferguson, etc., Co. v. Good, 112 Ark. 260, 165 S. W. 628; Shortridge v. Scarritt Estate Co., 145 Mo. App. 295, 130 S. W. 126; Merrill v. Los Angeles G. & E. Co., 158 Cal. 499, 111 Pac. 534, 31 L. R. A. (N. S.) 559, 139 Am. St. Rep. 134; Heddles v. Chicago, etc., Ry. Co., 77 Wis. 228, 46 N. W. 115, 20 Am. St. Rep. 106; S. W. Brewery & Ice Co. v. Schmidt, 226 U. S. 162, 33 Sup. Ct. 68, 57 L. Ed. 170; Newbury v. Getchel, etc., Co., 100 Iowa, 441, 69 N. W. 743, 62 Am. St. Rep. 582; Gray v. Washington W. & P. Co., 30 Wash. 665, 71 Pac. 206; Express Co. v. Wahl, 168 Fed. 848, 94 C. C. A. 260; vol. 4, Sutherland on Damages, p. 3594, § 1241; Tweed v. W. U. Tel. Co., 166 S. W. 965; Muth v. St. Louis Trust Co., 94 Mo. App. 94, 67 S. W. 978. We conclude that appellant's seventh and eighth assignments of error should be overruled.

[11] The mere fact that the witness Davis did not see the walls of the pressroom until after the accident did not require the exclusion of his testimony to the effect that he noticed several places where the mortar had either been washed out or had fallen out. Such condition in the walls and parts of the walls left standing a few hours after the wreck offered a fair inference that the same condition of the walls and mortar obtained in those parts of the walls that were wholly crushed, and this inference tended to support the plaintiff's allegations of insecure walls and supports for the tank.

[12-14] We also think the witness was properly permitted to state that the condition and defect in the walls observed by him could have been discovered by an inspection of the

same from the inside. It was shown that the witness was an experienced builder of stone and brick buildings, that he was one of the persons engaged in taking down the walls that had been left standing, had testified to the character of stones and condition of the mortar, and his opinion that the defects observed were such as were ascertainable by an inspection was competent. It does not, we think, invade the province of the jury as is urged. M., K. & T. Ry. Co. v. Steele, 50 Tex. Civ. App. 634, 110 S. W. 171; El Paso Elec. Ry. Co. v. Boer, 108 S. W. 200; St. L. S. W. Ry. Co. v. Brown, 163 S. W. 383; F. W. & D. C. Ry. Co. v. Ayers, 149 S. W. 1068; 2 Jones on Evidence, § 360 et seq. The same conclusion, we think, should be adopted in answer to the further objection to the testimony of this witness that the walls as he found them were in his opinion insufficient to safely support a 6,000 gallon tank of water. In qualifying he testified that he had had about seven years' experience in building brick and stone buildings, and in selecting mortar and stone for the same, and that he had assisted in the construction of four or five towers such as inquired about. It was shown that the tank rested upon a platform about four feet above the tin roof over the pressroom, that the platform rested on trestle work of heavy timbers, which the evidence tends to show was supported by the inner section of the stone walls. There was evidence tending to show that the tank was constructed of steel and contained about 5,500 gallons of water. We may take judicial notice of the fact that a gallon of water weighs 8⅓ pounds, and as already indicated we think his opinion as to the strength of the walls was competent. Indeed, the identical question, in substance, was so determined in the case of Cont. Ins. Co. v. Pruitt, 65 Tex. 126. See, also, Turner v. Harr, by the Supreme Court of Missouri, 114 Mo. 335, 21 S. W. 737. The further objection that the hypothetical question, in answer to which the opinion of the witness was given, assumed the capacity of the tank to be 6,000 gallons instead of "about 5,500," as shown by the evidence, goes rather to the weight of the answer than to its competency, particularly in view of the fact that if appellant desired to reap any benefit by reason of the discrepancy it could have been developed by further examination of the witness in the nature of a cross-examination. G., C. & S. F. Ry. Co. v. Compton, 75 Tex. 667, 13 S. W. 667. All that is required in such cases is that the evidence is substantially embodied in the hypothetical question. Kemendo v. Fruit Des. Co., 131 S. W. 73; Trinity & B. V. Ry. Co. v. McCune, 154 S. W. 237.

[15] The remaining assignments not disposed of by what we have already said attack the sufficiency of the evidence to sustain the verdict on the issue of appellant's liability, and the amount of the judgment on the issue of damages, but we are of the opinion that we should also overrule these assignments.

What we have already said we think abundantly supports the jury's verdict on the issue of liability, and after a consideration of the evidence, and of the character and extent of appellee's injuries, we do not see our way clear to declare that the verdict is excessive. The evidence tends to show that at the time of appellee's injury he was a strong, healthy man of 21 years of age, earning about $1.75 per day; that he had just married a young woman 19 years old; that he weighed about 145 pounds and was used to work; that the injuries rendered him unconscious, and that when he became conscious he was in Dr. Johnson's sanitarium at Ft. Worth; that after he became conscious he suffered a great deal; that the worst suffering was from his bladder, on account of not being able to pass his water; that his back was injured, causing pain and requiring an operation; that he suffered from this operation; that there were splinters in his forehead that had to be cut out, causing pain and leaving a scar; that since the injury and operation he cannot pass his water without straining; that his kidneys get sore, causing pain across the small of his back; that he has no control whatever over his bowels; that he has to take medicine to get them to move; and that they will not move without medicine; that when his bowels do move he is so paralyzed in those regions that he does not know when it is going to happen; that he has practically no feeling in his legs, and they are of no use to him, and are perishing away so far as size and strength are concerned; that he cannot stand on them or walk on them; that his body is not as large anywhere as it was; that his sexual organs had been so affected that he could not perform sexual functions by reason of the general paralysis of his body extending from his bowels downward; that he has no power of locomotion except to be carried or rolled in an invalid's chair; that prior to the injury he had been doing hard labor and thereby making a living for his family; that he is not able to do anything since the injury, but that it takes a great deal of the time of his wife and mother to take care of him; that his bladder is so far from under his control that it causes a dripping in his clothes at times.

Dr. Clay Johnson's evidence, which is also uncontradicted, shows: That when plaintiff came to his sanitarium there was a cut over one of his eyes, extending down into the bone with considerable foreign matter in there. That one of his legs down close to his ankle was broken; that he found that he could not move his legs. That the injury on his head produced a concussion of the brain. That an X-ray examination of his back disclosed the fact that there was an injury to the spinal column, showing that sensation was practically destroyed in his legs. That he performed an operation on the back, cutting down into the backbone and chiseling

and gouging out a part of the backbone in order to relieve the pressure on the spinal column. That this was a very severe and dangerous operation. That the injury to the back produced the want of sensation in the lower limbs, and that this was only slightly improved by the operation, giving just a little more sensation and motion in the lower limbs. That he was unable to pass urine as a result of the injury to his spinal column paralyzing his bladder and bowels. He further testified:

"Until the time he left the hospital he never had any true, perfect action of his bowels; his bowels would move in his bed, or in his clothing or gowns. Supposing that that condition has continued until the present time, I think it will likely be permanent. When I first saw him he looked to be well nourished, well developed, and if he had not been injured, an ordinarily stout young fellow, absolutely healthy in every respect. He likely will never have sexual power. I don't think there is any treatment that could be prescribed that would improve his condition. I don't think there is any treatment by electrical massages, or anything of that sort that would improve his condition."

Plaintiff was shown to have incurred and paid expenses of more than $1,000, including a surgeon's bill of $500, and sanitarium fees of $25 per week for 10 weeks, all of which was shown by the testimony of Dr. Johnson to be reasonable; also other doctor's bills and expenses. See St. L. & S. W. Ry. Co. v. Waits, 164 S. W. 870; W. P. Oil Co. v. Snell, 47 Tex. Civ. App. 413, 106 S. W. 170; G., C. & S. F. Ry. Co. v. Shelton, 30 Tex. Civ. App. 72, 69 S. W. 653; S. W. Tel. Co. v. Shirley, 155 S. W. 664; T. & N. O. Ry. Co. v. Kelly, 34 Tex. Civ. App. 21, 80 S. W. 1073; T. F. Lumber Co. v. Thomas, 147 S. W. 296; G., H. & S. A. Ry. Co. v. Hanson, 125 S. W. 64; T. & B. V. Ry. Co. v. Geary, 169 S. W. 202.

It is ordered that all assignments of error be overruled and the judgment affirmed.