HEDDLES, Respondent, vs. THE CHICAGO & NORTHWESTERN
RAILWAY COMPANY, Appellant.

*May 24 — June 21, 1890.*

*Railroads: Injury to person at street crossing: Evidence: Instructions to
jury: Damages: Practice: Remarks of counsel.*

1. In an action for injuries to a boy seven years old, which necessitated
amputation of both legs, the jury were instructed that in assessing
damages they should give adequate compensation for the plaintiff's
physical and mental pain and suffering, past and future, occasioned
by his injuries; "also for the mortification and anguish of mind
which he has suffered, and will in the future suffer, by reason of
the mutilation of his body and the fact that he may become an
object of curiosity or ridicule among his fellows." *Held*, not error,
the words quoted not being intended to specify new elements or
grounds for damages, but merely to indicate the causes from which
the mental pain and suffering would be likely to arise.

2. The plaintiff having been run over by defendant's engine at a street
crossing, an instruction as to the degree of care to be exercised by
an engineer on approaching such a crossing, to the effect that the
mere fact that a traveler is approaching the track is not sufficient
to require the engineer to give an alarm or stop his engine, especially
where it is in broad daylight, the engine plainly visible, the engine
bell ringing, and the traveler an adult in apparent possession of his
senses and looking in the direction of the train; that in such a case
the engineer would have the right to assume that the traveler
would stop, but that he cannot rest on that assumption so long as
to allow his engine to reach a point where it will become impossible
for him to control his train or give warning in time to prevent in-
jury to the traveler, supposing the traveler to continue in his
course — is *held* sufficiently favorable to the defendant.

3. The engineer having testified that the engine was running only be-
tween four and six miles an hour, and that he did not recollect
having stated, shortly after the accident, that they were obliged to
run faster than six miles an hour to do the work required, evidence
that he did so state was admissible for the purpose of discrediting
his testimony.

4. Evidence that there was no sign-board at the crossing, warning per-
sons to look out for the cars, was admissible.

5. The whistle on the engine not having been blown, it was not an
error prejudicial to the defendant to admit in evidence a city ordi-

Heddles vs. The Chicago & Northwestern R. Co.

nance prohibiting the blowing of engine whistles within the city limits "except as a necessary signal or to prevent accidents."

6. A witness who was in attendance upon the plaintiff for three or four weeks after he was injured was competent, though not an expert, to state whether he suffered greatly or not.

7. Evidence as to plaintiff's mental condition before and after the injury was admissible.

8. A ruling that a question is admissible is not a ruling as to the admissibility of a part of the answer which is not responsive thereto.

9. A verdict for $30,000 had been set aside. On the second trial counsel for the plaintiff, in an argument to the court in the presence of the jury, referred to the former verdict, claiming that in view of additional facts shown the damages then awarded would not now be excessive. *Held*, that these remarks were not so outside of the case as to justify a reversal of the judgment, especially as the second verdict was for only $18,500.

10. A verdict for $18,500 for injuries to a boy seven years old, necessitating the amputation of both legs and impairing his mental capacities, is *held* not excessive.

APPEAL from the Circuit Court for *Walworth* County.

Action to recover for personal injuries sustained by the plaintiff and alleged to have been caused by the negligence of the defendant's employees. The facts will sufficiently appear from the report of a former appeal in 74 Wis. 239. The facts shown on the second trial were substantially the same as those shown on the first, except so far as indicated in the following opinion. On the second trial the jury assessed the plaintiff's damages at $18,500. The defendant appeals from a judgment in favor of the plaintiff.

For the appellant there were briefs by *Winkler, Flanders, Smith, Bottum & Vilas,* and oral argument by *F. C. Winkler.*

For the respondent there was a brief by *Fethers, Jeffris & Fifield,* and oral argument by *O. H. Fethers* and *M. G. Jeffris.*

TAYLOR, J. This is an appeal from the judgment on a second trial of this action. On the first trial an appeal was

taken by the defendant, and the judgment was reversed for reasons stated in the opinion of this court. See case reported in 74 Wis. 239. Upon the former appeal it was held by this court that there was sufficient evidence in the case to support the verdict in favor of the plaintiff, and the judgment was reversed for errors occurring on the trial and because the damages awarded were, as we thought, excessive. On the second trial, there was the same evidence given on the part of the plaintiff as was given on the first trial, and some additional evidence was produced which materially strengthened the case upon the merits in favor of the plaintiff; and the learned counsel for the appellant do not contend on this appeal that there is not sufficient evidence to sustain a verdict for the plaintiff, but they allege that certain rulings of the court on the trial were erroneous, and that such errors were prejudicial to the appellant.

The first error assigned is the instructions of the court to the jury on the question of damages. The instruction objected to reads as follows: "The amount of the damages which you will assess is left to your judgment and discretion, considering the proper elements of damages, which are as follows: Adequate compensation for all of the physical and mental pain and suffering which the plaintiff suffered at the time of the accident, which he has suffered since that time, and which he is reasonably certain to suffer in the future, by reason of his injuries; also for the mortification and anguish of mind which he has suffered, and will in the future suffer, by reason of the mutilation of his body and the fact that he may become an object of curiosity or ridicule among his fellows." The learned counsel for the appellant take exceptions to the use of the words, "for the mortification and anguish of mind which he has suffered, and will suffer in the future, by reason of the mutilation of his body and the fact that he may become an object of curiosity or ridicule among his fellows."

It is urged that these words convey to the jury an idea different from that conveyed by the words "mental pain and suffering" which resulted from the injury. We think the learned judge only used the expressions excepted to as indicative of the causes from which the mental pain and suffering would be likely to arise from the injury received. There can be no doubt that the loss of the plaintiff's limbs would naturally cause mortification and anguish on the part of the plaintiff, and it is also quite certain that he would be to a considerable extent an object of curiosity, and to the thoughtless and unfeeling an object of ridicule. We think there was no error in the instructions excepted to. For authorities sustaining the instructions, see the following cases cited by the counsel for the respondent: *Wilson v. Young*, 31 Wis. 574; *Craker v. C. & N. W. R. Co.* 36 Wis. 657, 677; *Power v. Harlow*, 57 Mich. 107; *The Oriflamme*, 3 Sawy. 397; *Atlanta & R. A. L. R. Co. v. Wood*, 48 Ga. 565; *Toledo, W. & W. R. Co. v. Baddeley*, 54 Ill. 19; *Ballou v. Farnum*, 11 Allen, 73; *Western & A. R. R. Co. v. Young*, 81 Ga. 397; *McMahon v. N. C. R. Co.* 39 Md. 438.

The appellant also excepted to the refusal of the court to give the following instruction: "The engineer was not bound to stop his train or resort to unusual precautions the moment he saw the plaintiff, merely because he was approaching the track. It being broad daylight, and his engine plainly visible, and the bell ringing, he had the right to assume in the first instance that the plaintiff would stop in time to escape injury. He had the right to run on until he had evidence that the boy approaching the track was heedless of danger. When he had such notice, he was bound to use all reasonable care and diligence to avoid it." Instead of giving this instruction, the learned judge instructed the jury as follows: "The mere fact that the traveler is approaching the track is not, of itself alone, sufficient

to require the engineer to give an alarm or stop his engine, especially where it is in broad daylight, the engine plainly visible, the engine bell ringing, the traveler is an adult in apparent possession of his senses and looking in the direction of the train. In such a case, the engineer would have the right to assume that the traveler would stop; but he cannot rest on such an assumption so long as to allow his engine to reach a point where it will become impossible for him to control his train or give warning in time to prevent injury to the traveler, supposing the traveler to continue in his course." We think the instruction as given by the court was sufficiently favorable to the defendant, and that the instruction asked was properly refused because it did not fairly present the case to the jury as it was made by the evidence in the case.

The third exception is taken to the following testimony given by the witness Macloon. Macloon was examined as to a conversation he had with the engineer, Roberts, shortly after the accident, and he testified, under objection, that Roberts in that conversation said: "There is no use talking about six miles an hour. We couldn't do the work if we ran only six miles an hour, and we have to run faster." Roberts had been questioned as to this alleged statement, and he said he had no recollection of making such statement or of having any such conversation. Macloon was called on rebuttal, and asked about such conversation for the purpose of discrediting the evidence of Roberts as to the speed of the train. As this evidence was offered, not as original evidence for the plaintiff as to the speed of the train, but for the purpose of discrediting the evidence of Roberts on that question, we think it was properly admitted. It was substantially so determined on the former hearing in this case. See 74 Wis. 252.

The fourth exception to the evidence offered by the plaintiff, showing that there was no sign-board at the cross-

ing where the accident happened, was not well taken, as was decided by this court in the case of *Winstanley v. C., M. & St. P. R. Co.* 72 Wis. 375, 380.

The fifth exception was to the introduction of the city ordinance forbidding the blowing of the engine whistle " within the city limits, except as a necessary signal or to prevent accidents." We think there was no error in admitting this ordinance. It could not prejudice the defendant if the circumstances were such as did not render it necessary to blow the whistle to prevent an accident, and if, under all the circumstances, the jury should be of the opinion that the whistle should have been blown to prevent the accident, the ordinance did not forbid its being blown. As said in the former opinion, " The ordinance clearly contemplated that the whistle might be sounded whenever it should become necessary as a signal or to prevent accidents." We are unable to see how the admitting of this ordinance in evidence could have prejudiced the defendant.

The sixth exception is to a question asked of Elizabeth Spence, a witness for the plaintiff, who had testified that she had been in attendance upon the plaintiff for three or four weeks after he was injured. She said she " was with him the first night after the injury. He suffered very much. He suffered very greatly, and I could see that in his expression how he suffered, and every now and then he would lose his consciousness." Then the witness was asked this question: "To what extent, apparently?" To this question the defendant objected. The court overruled the objection, and the witness answered: "It was very bad. I can't tell, for it was so bad." Certainly, when this answer of the witness is considered in connection with the other evidence in the case as to what the plaintiff suffered from the accident, it is evident that it could not have prejudiced the defendant. We are of the opinion that this witness, from what she saw of the plaintiff and his condition for

two or three weeks after his injury, was competent to state as a fact whether he suffered greatly or not. It would not require an expert to give an opinion, if the question can be said to call for an opinion instead of a fact which was apparent to her observation.

The seventh error assigned was the overruling of an objection to the following question asked of the father of the plaintiff: "What was the boy's temper before he was injured?" The answer was: "He was of bright and cheerful temper. Now, he is very irritable, and if anything excites him he seems to be uncontrollable." It would seem that the question was a very proper one, as showing that the boy's mental condition was sound before the injury; and we are also of the opinion that the answer as to his mental condition after the injury, although not responsive to the question, was admissible. It would seem that, if an injury caused a permanent mental defect or disease, it would be equally as good ground for the recovery of damages as though a physical defect or disease was the result. But the question did not call for the mental condition of the boy after the injury; and, if the defense objected to the witness stating what such condition was after his injury, he should have moved to strike out that part of the answer stating such condition. It was not called for by the question objected to, and the plaintiff is not responsible except for that part of the witness' answer which is responsive to the question propounded. The ruling of the court that the question was admissible was not a ruling that that part of the answer not responsive to the question was or was not admissible.

After the testimony was closed the counsel for the plaintiff addressed the court as follows: "Upon this trial what was problematical or theoretical is demonstrated; and the proof is here of the failure or decadence or stoppage, whatever view you take of it, of the mental faculties themselves.

His memory is not so good.  He is duller.  He cannot learn so well.  Now I claim, with that feature added, that the verdict of thirty thousand dollars was not excessive, and that, in giving the instructions to this jury upon a proper amount, that this court should have in mind, when thinking of what the supreme court has said upon the matter, that there is this additional feature in the case."  These remarks were objected to by the defendant, and an exception was taken to the remarks of counsel as to what the verdict in the previous trial was.  To this exception the court remarked: "You may preserve your exception.  I cannot dictate to counsel in advance.  Counsel stands here and claims to be making a legal argument, and I cannot say that he is not making a legal argument to the court."  We are unable to see any impropriety in the remarks of counsel as above quoted.  Counsel had the right to claim, if the testimony in the case made a stronger case for damages than on the first trial, that the fact that this court had declared that in their opinion the former verdict was too large should not govern the court in instructing the jury upon that point in the present trial.  These remarks were not so outside of the case as to justify a reversal of the judgment, especially as the verdict shows that they could not have prejudiced the defendant on the question of damages; the jury in this case fixing the damages at $18,500,— $11,500 less than the verdict on the first trial.

The ninth error assigned is that the damages assessed are excessive.  The counsel for the appellant has not urged this point upon the court in his oral argument.  To the ordinary young man, $18,500 is a large sum of money; but we cannot say that it is too large a sum to make him compensation for an injury which has to a great extent destroyed his capacity to contend successfully with his fellows for those things which make life enjoyable and happy, and which has

left him in such a state, both physically and mentally, as must render his life a burden hard to bear.

The case seems to have been fairly tried upon the merits, and none of the exceptions taken seem to us of sufficient importance to justify a reversal of the judgment.

*By the Court.*— The judgment of the circuit court is affirmed.