### ELLS v. SCANDRETT et al.
#### No. 1394.

District Court, D. Idaho, N. D.

Dec. 23, 1938.

Appeal dismissed Sept. 18, 1939.

Gray & McNaughton and J. Ward Arney, all of Coeur d'Alene, Idaho, Carl M. Buell, of St. Maries, Idaho, and Therrett Towles, of Spokane, Wash., for plaintiff.

A. N. Whitlock, A. J. Laughon, and Thos. H. Maguire, all of Seattle, Wash., and Wm. D. Keeton, of St. Maries, Idaho, for defendants.

CAVANAH, District Judge.

The case was tried by the Court without a jury and is one where the plaintiff Arthur Ells is a minor of the age of about three years, by his general guardian seeks a judgment for damages for personal injuries to him alleged to have been caused by the negligence of the defendants, about 2 o'clock P. M. on August 12, 1937, when he and another minor about four years of age were playing on the railroad tracks of the defendants in Parker's Addition, adjoining the City of St. Maries, Idaho, and that while so engaged in playing and while the employees of the defendants were operating an engine in switching cars which were moved at the time when the plaintiff Arthur Ells was underneath one of the cars or upon one of the rails of the passing track and before he could crawl to a place of safety, his right arm was cut off and his left hand crushed and three fingers thereof cut off.

The question upon which the case must turn is whether under the evidence the defendants were negligent, and before an analysis of the evidence is made, in determining that, we must not be unmindful of the general principles of law as announced by the Supreme Court of Idaho, which are now controlling under the recent decision of the Supreme Court of the United States in the case of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. What constitutes ordinary care and prudence, in a case of this nature, to be exercised by employees of a Railroad Company, when an accident occurs, is to be measured by the maturity and capacity of the child and an infant of tender years, wherever he may go, must be expected to act upon childish instincts and impulses, and those who are chargeable with the duty of caution and care toward them must calculate upon that. Reasonable care with respect to adults might be gross negligence as applied to a young child. This principle is recognized by the Supreme Court of the State as we find in the case of Miller v. Gooding Highway District, 55 Idaho 258, 41 P.2d 625, 628. The Court said: "A child without discretion, although a trespasser, occupies a legal attitude similar to that of an adult who is not a trespasser. * * * As to such, the care required to be exercised is measured by the maturity and capacity of the child. What would constitute reasonable care with respect to adults might be gross negligence as applied to young children."

And again the State Supreme Court has said in the case of Anderson v. Great Northern R. Co., 15 Idaho 513, 99 P. 91, 95. "The court instructs you as a matter of law that a greater degree of care and caution will be required to avoid injury to an infant, that may be supposed to be incapable of caring for itself, than would be required in the same situation to avoid injury to an adult. A child is held only to the exercise of such degree of care and discretion as is reasonably to be expected from children of its age. A child of four years is presumed to be incapable of undertaking ordinarily the dangers and perils incident to the walking upon the railroad track. Children of very tender age are conclusively presumed to be incapable of exercising care and judgment to avert injury from themselves, and, as a matter of law, contributory negligence is not imputable to them."

The principle announced in Bicandi v. Boise Payette Lumber Company, 55 Idaho 543, 44 P.2d 1103, 1107, is approved in many adjudicated cases and in that case the Supreme Court of the State quoted with approval from a Tennessee case that: "Children, wherever they go, must be expected to act upon childish instincts and impulses; and others who are chargeable with a duty of care and caution towards

them, must calculate upon this, and take precaution accordingly."

An instructive case upon the general subject is Union Pacific Railroad Company v. McDonald, 152 U.S. 262, 14 S.Ct. 619, 38 L.Ed. 434, where it is held that a railroad company is liable for injury received by an infant while upon its premises from idle curiosity or for the purpose of amusement, if such injury was under circumstances attributable to the Company.

Adhering to the principles thus announced and applying them to the case now before the Court they require the conclusion to be reached that the defendants were guilty of negligence, for the great weight of the evidence establishes that there were five tracks at the place where the accident occurred. The most southerly one of which was the main line track and next to it on the north was what is known as the passing track. A pathway termed as "Rogers path" crossed the tracks near the place of the accident. This pathway, with steps and a foot bridge, leads down to the track on the south side of the track on which the Ells and Oberg Homes face, and had been used by employees of the Rogers Mill for many years. There were two other pathways leading to the tracks from the road in front of these homes, and on the day and at the point where it is thought that the accident occurred an opening was left in the freight train, and Johnson, an employee of the defendants, made the coupling at the pathway crossing the tracks leading from the path and foot bridge.

Shortly before the accident occurred, the plaintiff Ells and Harold Oberg, another boy of about five years of age, were discovered playing on the tracks in the switching yard of the defendants by Johnson and Broyles, two of the defendants' employees. When Broyles saw these two children they were standing still and Johnson was looking at them and waving, the children stood there about a minute and then they turned and bolted under the train on the main line. Johnson, the brakeman, saw two boys whom he thought were between two and five or six years old, and who he described, fits the description of the plaintiff and his companion. Upon his asking where they lived the older boy pointed south of the tracks and he then told them "to duck home and stay there" and then went on about his business, walking slowly eastward. He saw

them jump between the cars on the south of the main line and saw them again when they were standing south of the main track near the train on that track, and stated on direct examination that they had crawled under the cars. In a conversation in a caboose a few days after the accident, between Johnson and the plaintiff's father, a deputy sheriff and the grandfather of the plaintiff, and Morris, a brakeman, being present, Johnson said in substance as testified to by a majority of those present that at the time he, Johnson, told the children it was all right to crawl under the train, that there was no engine on it; that they went away and that he did not see the boys afterward and did not know whether they went home.

Johnson realized that when these children were playing on the tracks, he could not help being aware of their perilous position, while trains were being bumped and switched, as he told them it was a dangerous place, where they might be injured, and when the 28 or 29 cars were made up which were shoved by the engine toward the east about 2:15 o'clock P. M. with Johnson riding on the top of the leading car, is about the time the mother of the plaintiff said the plaintiff returned with his injuries. The blood on the south rail of the passing track, the grease and the boy's arm were found immediately after the accident about 20 or 25 feet east of the Rogers path.

Immediately after the accident occurred, the plaintiff when coming home told his mother: "See what the bad old box car done to my arm" and when his mother asked "how in the world it happened" he said "The big man with a white shirt told me to crawl under the car and go home and he went to the bushes for a little while and went back. I guess I will have to go to see Doctor Patton."

The facts further disclose that the steps and foot bridge and the Rogers path crossing defendants' tracks near the place of the accident had been used by pedestrians for many years, and was acquiesced in its use by cutting into defendants' freight trains at that point to enable pedestrians to pass over the track without interruption. It was the duty of Johnson to go to the crossing and couple the cars which had been left upon the track in order to permit pedestrians to cross, and a reasonable conclusion from all of the evidence is that Johnson saw the infants play-

ing at or near where the plaintiff was injured, and he, after that, went on switching on the passing track. The Railroad Company is, under the rule in Idaho, required to exercise special care and watchfulness at any point upon its tracks where the roadbed is used constantly by pedestrians or people may be expected on the track. This definite rule is announced and now settled in the case of Anderson v. Great Northern Ry. Co., supra, where it is said: "It does not appear to us as either rational, humane, or consonant with a proper regard for the value and protection of human life to say that the demands of travel, commerce, and transportation are so pressing and urgent as to rise superior to the safety of human life. Transportation these days is carried on at ·almost, if not quite, double the speed at which it was a few decades ago, and it is a well known fact to the officers, agents, and employés of railroad companies that pedestrians do cross, and oftentimes travel along, certain portions of the track. Where such travel has been permitted·by the company, and has become habitual, the company which is operating trains daily, and often hourly, over the road, becomes acquainted with and cognizant of such fact, and it ought to be held to the exercise of greater care for the protection of life at such places and under such conditions than would be required of it generally over its road at such places as it has no reason to anticipate or suspect the presence of pedestrians. The company has it in its power, in rural districts at least, to prevent the growing up of such a custom, and to break it up if it has arisen, and, if it does not see fit to do so, it should be held to greater care in attempting to prevent injury. It was not improper to admit the evidence which tended to establish the existence of a trail along this road. * * *"

"It is clear to us that a stricter rule with reference to duty and obligation to trespassers ought to be enforced against public service companies and corporations handling and operating dangerous and destructive forces, substances, and agencies than is applicable to the owner of farm lands or town lots."

The same degree of care ·and diligence is expressed by the Circuit Court of Appeals of the Ninth Circuit in the case of Northern Pac. Ry. Co. v. Curtz, 196 F. 367, 369: "The occupant or owner of premises who invites, either expressly or impliedly, others to come upon them, owes to them the duty of using reasonable and ordinary diligence to the end that they be not necessarily or unreasonably exposed to danger; and an implied invitation to another to enter upon or occupy premises arises from the conduct of the parties, and from the owner's knowledge, actual or imputed, that the general use of his premises has given rise to the belief on the part of the users thereof that he consents thereto. This doctrine has often been applied to cases where a railroad company permits the public to cross its track between given points, and it is universally held that, where for a considerable period persons have been accustomed so to cross a railroad track, the employés of the company in charge of its trains are required to take notice of that fact, and to use reasonable precautions to prevent injury to persons whose presence there should be anticipated."

■ When Johnson discovered these two infants upon the tracks between the cars, it was not exercising that degree of care and diligence required for him to merely direct the two infant children to go home and to inform them that it was dangerous and that they might be injured, and then go on about his business. When he knew that infants of that age were in a dangerous place where freight trains were being switched and bumped and shoved back and forth, his duty was to do more than he did, and go farther to see that they were off the right of way when the train was moved, that ran over the infant plaintiff.

So under the facts referred to and other facts and circumstances appearing in the evidence, the defendants were grossly negligent in not protecting the infant plaintiff from injury. Of course, contributory negligence is not imputable to an infant of plaintiff's age under the rule recognized by the state Supreme Court in Anderson v. Great Northern Ry. Co., supra; Asumendi v. Ferguson, 57 Idaho 450, 65 P.2d 713; Northern Pac. Ry. Co. v. Chervenak, 9 Cir., 203 F. 884.

■ After reaching the conclusion that the defendants were negligent and that the plaintiff is entitled to a judgment, we approach the problem of what sum should be awarded to the infant plaintiff as is reasonable and just under all of the cir-

cumstances of the case. In measuring plaintiff's damages we should take into consideration the physical pain on account of bodily injuries, past and future; for the mental suffering resulting from the injury; for mutilation and disfigurement; for impaired working capacity after he reaches his majority and all detrimental effects which naturally and proximately result.

He was a normal healthy child before the accident and has suffered intense pain since then and will suffer further pain when the further operations will be required on his arm until he reaches maturity. These elements are recognized by the Supreme Court of the State and other courts when in ascertaining what compensation a minor should recover. Reinhold v. Spencer, 53 Idaho 688, 26 P.2d 796; McClain v. Lewiston Interstate Etc., Ass'n, 17 Idaho 63, 104 P. 1015, 25 L.R.A.,N.S., 691, 20 Ann.Cas. 60; Griffen v. City of Lewiston, 6 Idaho 231, 55 P. 545; Horn v. Boise City Canal Company, 7 Idaho 640, 65 P. 145; Denbeigh v. Oregon-Washington R. & Nav. Co., 23 Idaho 663, 132 P. 112; Heddles v. Chicago & N. W. Ry. Co., 77 Wis. 228, 46 N.W. 115, 20 Am.St.Rep. 106.

In this respect as stated, the undisputed evidence discloses that the plaintiff, an infant, of now about four years of age, has lost his right arm which was amputated between the shoulder and the elbow, and three of his fingers on his left hand, leaving him only his thumb and little finger on his left hand. He has suffered intense physical pain and will in the future, as the doctors say another operation will be necessary. His mental suffering from the injury; and mortification and anguish of mind which he will suffer by reason of the mutilation of his body will be great, and he will be, to a considerable extent, an object of curiosity, and to the thoughtless an object of ridicule. His life expectancy is about fifty years, which would leave him 33 years after arriving at his majority, and after considering all of these facts, his earning capacity in an occupation of ordinary men being destroyed and the handicap which he mentally and physically must carry through life, I cannot reach but one conclusion, that $40,000 and costs is a just and reasonable sum to be awarded to him as damages.

Findings and decree will be prepared by counsel for the plaintiff and served and settled as required by rules of this Court.