FRAZIER et ux. v. NORTHERN PAC. RY. CO.

No. 1383.

District Court, D. Idaho, Central Division.

June 12, 1939.

William S. Fowler and Abe Goff, both of Moscow, Idaho, for plaintiffs.

Cannon, McKevitt & Fraser, of Spokane, Wash., and Verner R. Clements, of Lewiston, Idaho, for defendant.

CAVANAH, District Judge.

The case was tried before the Court without a jury, and is one where the plaintiffs, who legally adopted one George Frazier, when he was three years of age, seek to recover damages for the negligence

of the defendant in causing the death of George Frazier, when at the age of nine years, and when struck by an oncoming train of the defendant.

The theory upon which damages is claimed is that the defendant was operating its train at an unlawful rate of speed within the City limits of Moscow, Idaho, that its servants saw or should have seen the child on the track for a distance of approximately a quarter of a mile, in ample time to have averted the accident; that a bridge on defendant's right of way in the immediate vicinity of the place where the accident occurred attracted children to such an extent, and was known or should have been known to the defendant's employees, enjoined upon them the duty of operating its trains with special caution, lookout and attention at that particular part of its track, and that defendant's train crew failed to apply the brakes of the train and sufficiently warn the boy on its track by blowing its whistle or ringing its bell until its cars were almost upon the boy and too late to have averted the accident.

The defendant takes issue with the plaintiffs and asserts that the death of the boy was not caused by any act of negligence on its part but was caused alone by his contributory negligence.

The facts appear to be that the defendant had for a long time prior to and at the time of the accident operated a railroad in and through the City of Moscow, between the points of Spokane, Washington, and Lewiston, Idaho. The distance from the east City limits of Moscow, where the railroad track enters the east City limits, coming from Lewiston, to the west City limits is approximately 9400 feet. The distance leaving the west end of the curve often referred to is 2900 feet to the point where the boy was struck, and between these points the track was straight and no obstructions appear as to vision.

The testimony as to the speed the train was going when it went through and out of the curve varies as to the opinions of the witnesses between 30 and 50 miles per hour. The testimony of the engineer and fireman on the train discloses the speed of the train was 35 miles an hour, and the fireman said that he saw the boy before he was struck at least 260 feet and the engineer said he saw him at 50 feet. The boy went upon the north side of the track, unfenced, at approximately 500 feet

from the point of the accident. He and another boy of 10 years of age walked for some distance on the track and started then to run, when he was struck. The two boys were playing in flying a kite between the track and the public highway, before they went upon the track. The highway is the Troy public highway and it parallels the right of way of the defendant which was not fenced, and open. The maximum rate of speed, of the regulation of the Company in operating its train between Lewiston, Idaho, and Spokane, Washington, was 45 miles per hour.

The boy was struck by the extreme right lower corner of a wooden bar stretched horizontally across the front of the engine, and the engineer and fireman say the boy was struck just as he was leaving the track.

The engineer testified that the speed of the train was between 30 and 35 miles per hour. The speed table offered by the Company shows that a train going 35 miles per hour would go 51.3 feet in one second. The distance from the west end of the curve to where the boy was struck is 2900 feet. The train was finally stopped in 325 feet from the place where the boy was struck, and then being able to stop the train within 325 feet at the speed of 35 miles per hour it could have been stopped if the brakes were applied when leaving the west end of the curve before striking the boy. And furthermore, if a train going 35 miles per hour would go 51.3 feet in one second, it would take 56.9 seconds before it travelled 2900 feet, which would give that time of notice if the whistle was given coming out of the curve, and at the west end of the curve. The Engineer said he did not see the boy until he was about 50 feet from him. So it is apparent that the Engineer was not keeping a close lookout from the time his engine was leaving the curve at the west end of it, until he was about 50 feet from the boy. It was a clear day and still daylight, at about 5 P. M. on March 9, 1938, when the accident occurred within the City limits. Moscow is a small city and in the vicinity of where the accident occurred roads and streets cross and parallel the right of way of the defendant, and a number of homes are there.

Sometime ago the City adopted an ordinance which was in force prohibiting the operation of a railroad train within its limits at a greater speed than 8 miles per hour, and at the time of the accident the

train was going more than four times the rate of speed prohibited by the ordinance.

The constitutionality and reasonableness of the ordinance is challenged by the defendant as it is urged that the City has not the power to enact the same under the state law and provisions of the constitution relating to governing of interstate commerce. The trend of authority is that the legislature of the state may empower municipal authorities to enact ordinances regulating the speed of a railroad train within the City limits for the protection of life and property and such an act may even apply to interstate trains for it is within the police power of the state until Congress shall take action in the matter. Erb v. Morasch, 177 U.S. 584, 20 S.Ct. 819, 44 L.Ed. 897; Cleveland, C. C. & St. L. R. Co. v. Grambo, 103 Ohio St. 471, 134 N.E. 648, 20 A.L.R. 1222; Thompson v. St. Louis-San Francisco Ry. Co., 334 Mo. 958, 69 S.W.2d 936. And ordinances limiting the speed of railroad trains within Cities to rates of speed from 4 to 10 miles per hour, even in sparsely settled territory, have been sustained. 20 A.L.R. 1225. The authority to enact the ordinance is granted by Secs. 49-1101, 49-1118, I.C.A. Section 49-1118 provides: "Regulate the crossings of railway tracks and to provide precautions and prescribe rules regulating the same; and to regulate the running of railway engines, cars or trucks within the limits of said city or village, and prescribe rules relating thereto, and to govern the speed thereof, and to make any other and further provisions, rules and restrictions to prevent accidents at crossings, and on the tracks or railways, and to prevent fires from engines."

The statute grants power to cities to regulate the running of railway engines and cars and to govern the speed thereof within the city in order to prevent accidents on the tracks or rights of way. Before a Court would be justified in declaring an ordinance limiting the speed of trains invalid within a city in the exercise of its police power, it must clearly appear to be unnecessary and unreasonable for the safety of the public. 20 A.L.R. 1223, 1224. There is no evidence offered showing that the ordinance is unnecessary or unreasonable and the City Council when enacting it, no doubt, took into consideration that Moscow being a city with numerous roads and streets crossing and paralleling the company's right of way, numerous small homes are in the area where the accident occurred, the right of way on one side of the tracks being unfenced and open to the public, and before entering the east limits of the City the railroad tracks go through a curve. Under such physical facts and circumstances the City authorities deemed it necessary in the protection of life to limit the speed of trains to 8 miles per hour while going the short distance through the City. The Council of the City when enacting the ordinance, no doubt had in mind the fact that the railroad track was unfenced and the propensity of small boys to go upon it. The mere fact that the legislature of the State has given power to the Public Utilities Commission to regulate the speed of railway trains does not prevent the City from doing so in absence of proof that the Commission has taken action. Switzler v. Atchison, T. & S. F. Ry. Co. et al., 104 Cal.App. 138, 285 P. 918. The argument that there is a discrimination between the railroad and the bus lines seems untenable under the authorities for when a statute or ordinance applies to or deals with a single class it is not necessarily a special law or objectionable or a class legislation, as classes are founded on natural differences. This principle is recognized by the Supreme Court in the case of Erb v. Morasch, supra, when it is said [177 U.S. 584, 20 S.Ct. 820]: "It is not a question to be settled by the opinions of witnesses and the verdict of a jury * * * whether one railroad in its operations is more dangerous than another. All that is necessary to uphold the ordinance is that there is a difference, and that existing it is for the city council to determine whether separate regulations shall be applied to the two." Of course an ordinance is as much a law within the limits of a municipality as a state statute, and is intended to protect persons and a violation thereof which results in injury and is the proximate cause of it is negligence per se as recognized by the Supreme Court of Idaho. Brixey v. Craig, 49 Idaho 319, 288 P. 152; Carron v. Guido, 54 Idaho 494, 33 P.2d 345.

Under the facts and circumstances the deceased boy was entitled to the protection of the ordinance. It was the duty of the fireman to keep a sharp lookout on the inside of the curve and particularly when approaching the City and when leaving the west end of the curve, a dis-

tance of 2900 feet from the place where the boy was struck, it was then the duty of the engineer to have kept a lookout and use ordinary care in discovering the position of peril the boy was in and if the boy was in a position of danger he must exercise the highest and greatest care, Stergon et al. v. St. Louis-San Francisco Ry. Co., Mo.App., 286 S.W. 720. This thought is upheld by the Supreme Court of Idaho in Anderson v. Great Northern Ry. Co., 15 Idaho 513, 99 P. 91. It is evident the engineer ran blindly from a point between the cemetery until almost upon the boy and when going through the curve the fireman seemed otherwise engaged than in keeping a lookout.

It is urged that the boy was a trespasser upon the railroad track and therefore recovery should not be granted. What is the rule in Idaho in regard to a child of tender years upon a railroad track or at a dangerous place where he is injured? The standard of conduct required of a child of tender age is not reasonable to expect of an adult but his conduct is to be adjudged by the standard of behavior to be expected from a child of like age, intelligence and experience. Anderson v. G. N. Ry. Co., supra; Miller v. Gooding Highway Dist., 55 Idaho 258, 41 P.2d 625; Ellis v. Ashton & St. Anthony Power Co., 41 Idaho 106, 238 P. 517, 518; Arthur Ells et al. v. Henry A. Scandrett et al., Trustees of Chicago, Milwaukee St. Paul & Pacific Railroad Company, 28 F.Supp. 16, filed in this Court December 23, 1938.

In the Miller case, supra, the Court said [55 Idaho 258, 41 P.2d 628]: "A child without discretion, although a trespasser, occupies a legal attitude similar to that of an adult who is not a trespasser." Cases based upon facts analogous to the present one and recognizing the principle as announced by the Supreme Court of Idaho are: Erb v. Morasch et al., 8 Kan. App. 61, 54 P. 323; South & North Alabama R. Co. v. Donovan, 84 Ala. 141, 4 So. 142; Alabama & V. Ry. Co. v. Carter, 77 Miss. 511, 27 So. 993.

The primary question under this thought is; Was there any duty private or public which the defendant owed to the deceased child and which it failed to perform? Under the evidence the degree of care required to be exercised by the company when a child is in a perilous position is that it owed to the child not to run its train at a dangerous speed through the curve, just entering the City, and within the City limits. The boy who was with the deceased, Bobby Fix, says that he had no warning of the coming train until he heard the "clickety-clack" behind him and that they were running with their backs to the oncoming train. It is very questionable if the series of alarms and whistles which were given would be of any avail due to the speed of the train when it was too close to the boys when given.

The same presumption that an adult will get off the track is not to be indulged in with a child of nine years under the circumstances here.

There is conflict in the evidence as to children frequently resorting to play around the bridge with steps situate near and in the area where the accident occurred and if it was to such an extent that the servants of the company knew it to be attractive to children playing in that area, however that may be, if children were in the habit of resorting there and such habit was frequent and it was sufficiently evident that the trainmen either did or should have known about it, that may be considered with the other circumstances recited.

Reaching then the conclusion from the evidence that the defendant was negligent, which was the proximate cause of the death of the child, it remains to be determined what amount of damages the plaintiffs are entitled to recover. There existed an affection and love between plaintiffs and their deceased son and a loss of joy, companionship and pleasure of the boy in their home and under all the evidence the sum of $7,000 plus $200 funeral expenses incurred is regarded as fair and reasonable compensation as damages to be awarded to the plaintiffs, together with plaintiffs' costs.